J. Irwin Shapiro, J.
Upon the trial of this action it was stipulated that the sole issue to be submitted to the jury would be the question of liability; that if the jury should find for the plaintiff, the court should fix the damages, after considering the reports of the plaintiff’s doctors, the defendant’s doctors and the hospital records, and that the special damages set forth in the bill of particulars should be accepted as correct.
At the end of the plaintiffs ’ case, and again at the end of the whole case, the defendant, the Board of Education of the City of New York, moved to dismiss the plaintiffs’ complaint. Decision was reserved on those motions.
In accordance with the stipulation of the parties, the case was submitted to the jury on a charge dealing solely with the question of defendant’s liability, if any, for the accident. The jury found for the plaintiffs and decision was reserved on defendant’s motion to set aside the verdict and for a directed verdict in its favor.
A consideration of the facts is necessary to a proper understanding of the problems involved in passing on the motions.
On November 9, 1955, at about 12:20 p.m., at Junior High School No. 9, while the infant plaintiff was a student in the seventh grade, he was kicked by another boy during the playing of a game described as soccer, as a result of which he was knocked to the floor and struck the back of his head.
The game was being played in the gymnasium under the supervision of the physical education teacher in charge. The teacher placed a group of 20 boys on one side of the gymnasium *20 and another group of 20 boys on the other side, and a ball was then placed in the middle of the gymnasium floor. Each boy in the one group was given a number and his counterpart in the other group was given a similar number. When the instructor would call a particular number the two boys to whom that number was assigned would run toward each other as rapidly as they could for the purpose of kicking the ball toward the desired goal. It was in the course of doing so, and while the plaintiff was running toward the ball in an effort to get there first and to kick it, that his opposite number, running toward the plaintiff and also endeavoring to get there first to kick the ball, kicked the infant plaintiff causing him to fall and to sustain injuries.
The boys were about 75 feet apart when they began to run toward each other, so that each boy had to run about 37% feet in order to reach the ball which was placed between them.
The physical education teacher, although testifying that the boys participating in the game all came from the same grade, admitted that he picked them out at random and made no effort to match up boys of the same general height or weight. The infant plaintiff testified that his opposite number was about 6 feet tall and weighed about 180 or 190 pounds, thus making it apparent, from seeing the infant plaintiff five years later at the trial that he was practically a baby compared to his erstwhile opponent at the time of the accident.
The defendant was given leave to submit a memorandum to sustain the validity of its motions to dismiss, to set aside the verdict and for a directed verdict in its favor. No such memorandum has been received.
A careful perusal of the record makes it clear that all of the defendant’s motions must be denied. An exception to such denial is granted to the defendant.
This boy was 12 years of age at the time of the occurrence. He was compelled to attend school by law. Neither he nor his parents had any choice in the matter. The Board of Education, during the hours when it had the custody and control of the infant plaintiff as its student, had a duty to act toward him in a sane and sensible fashion. To require improperly matched infants to engage in a hazardous “soccer” game which required them to run toward each other at full speed over a distance of 37% feet, placed the infant in grave danger of injury which the defendant in the reasonable exercise of care and caution was bound to anticipate. To demand and require that infants engage in such a dangerous “ sport ” simply does *21 not make sense and when it results in injury to a student the entity which causes it should be held to strict accountability.
We could well say with Mr. Justice Hefferhan in Gardner v. State of New York (256 App. Div. 385, 387): “Perhaps our notions on the subject of education are outmoded hut the view that exercises such as these form a necessary part of education impresses ns as being absurd.”
The defendant, the Board of Education of the City of New York, was clearly negligent in requiring this immature child to engage in this activity. It should therefore he properly cast in damages.
Fortunately, the injuries to the infant were of a minor nature. Although he suffered a cerebral concussion and his doctor, in an affidavit made in October, 1956 says that the plaintiff “ is now suffering the effects from a post-concussional syndrome ” and that 6 8 Since injury of this type may be a forerunner of serious consequences, the prognosis in this case must necessarily be guarded ” the opinion of this general practitioner must yield to the findings of the city’s outstanding neuropsychiatrist, whose examination discloses that88 there is no neurological disability ” and that8 8 the neurological examination is within normal limits. ’ ’ So, too, the defendant’s Medical Examiner, who made his examination on March 22, 1956, found no objective signs of injury. The boy was in the hospital about four days and returned to school on November 21, 1955.
I find that whatever injuries the boy sustained at the time of the occurrence were of a temporary and transient nature and that an award to him in the sum of $2,500 would be fair and reasonable compensation for such injuries. The bill of particulars shows that the father expended the sum of $75 for the doctor and $125 for the hospital. Under the circumstances, judgment is directed in favor of the infant plaintiff in the sum of $2,500 and in favor of the father plaintiff in the sum of $200.