J. Irwin Shapiro, J.
This case was previously tried. The jury disagreed. Upon the retrial, the parties waived a trial by jury and submitted the case to me for determination on the record of the previous trial and other additional data.
On January 29, 1955 the plaintiff, then a student at Whitlow Reed Junior High School, Brooklyn, was injured in the course of a game of line soccer played on a gymnasium floor area of about 60 feet in length and 50 feet in width. The game was conducted and supervised by a regularly appointed teacher as part of a physical education program approved by the defendant. I accept and credit the uncontradicted testimony of plaintiff and another witness to the effect that they were given no choice in the matter and had to participate in the game. Defendant’s own official syllabus provides that the game should be played by two teams of about 10 to 20 players each, in a space of about 30 to 40 feet, and that each team consists of guards and one forward. The guards line up along the goal lines, on opposite ends of the playing area and must remain there during the game. The object is to score by kicking the ball through the opposing guards and across the goal line. Toward that end, the forwards try to gain possession of the ball and advance it by dribbling and kicking it until in a position favoring a kick through the line of the opposing guards, who, in turn, try to block or trap the ball and kick it away from their goal line. Play is begun when the referee, on signal, rolls the ball slowly between the two forwards, who stand near the center of the play area as indicated by a diagram and contest for possession of the ball when it reaches them. A goal counts one point and after each score the referee puts the ball into play again, as at the beginning of the game. 1 ‘ After sufficient skill has been acquired, two or more forwards may be selected from each team.” The syllabus cautions that care must be taken that the kicking is “ not too severe ” and provides that pushing, holding or shoving an opponent is prohibited under penalty. However, the teacher, in the exercise of a discretion confirmed by defendant’s director of physical education, did not adhere to the method prescribed by the syllabus.
Instead, she divided a class of some 40 to 45 “ prepared ” students into two teams of 20 to 22 children on each team on each side and assigned them numbers one to five so that four children on each team had the same number. Bach group then lined up on its own goal line without any forwards stationed at *416 the middle area, and the teacher took her position on the side line, dead center, from which she rolled the ball along the center line, toward the midpoint and called out one of the assigned numbers at random. Thereupon, the students having that number ran out and converged on the ball to gain its possession, and if possible, kick it over the opposite goal line. It was during such a scrimmage that plaintiff was injured when she fell to the floor and two or three other girls fell on top of her.
She has advanced two versions of that occurrence. On her examination on the claim (June 19, 1957), she testified, in substance, that while she and the other girls were trying to kick the ball, a member of the opposite team “ kicked the ball and kicked me and I fell * * * on the slippery floor ’ ’. On the trial, there was no claim that the condition of the floor caused the accident. Plaintiff, confronted with her prior inconsistent statement, explained that she had received a heavy kick before she fell, but that the fall itself was caused by a shove and not the kick. This happened on her ‘1 first time out ’ ’ and about 15 or 20 minutes after the game had started. Her trial version of the matter was supported by the testimony of a friend who had been her classmate and had witnessed the principal and background events. On the other hand, the teacher testified that plaintiff and two other girls fell as they were trying to kick the ball, but she could not say specifically, just what happened before the fall. Plaintiff was 13 years of age at the time, and weighed about 110 pounds, but there is no evidence of the relative sizes and weights of the others involved in the scrimmage, and, therefore, no basis for any conclusion as to disparity in that area. Plaintiff’s theory of liability is that the teacher was negligent in directing such variances from the syllabus as made the game dangerous for novices and that the original negligence was compounded by her failure to intervene and enforce the rule against pushing and shoving when the violations occurred.
The first variance was in putting eight players into the field of play instead of two and the second was in sending them into action on the run rather than from standing positions. In short, plaintiff’s position is based on the limits of defendant’s syllabus to one forward on each side until “ after suEcient skills have been acquired ” and on its contention that the participants were novices without the skills to justify the variances. On the one hand, plaintiff and her classmate testified that the day of the accident was the first time that the game had been introduced to and played by them. On the other, the teacher testified that the children had played the game at least two or three times before then, but she had no actual recollection of the matter her *417 testimony being, in reality, her conclusion drawn from an assumed fact, i.e., (1) that in the regular course of her professional duties, a unit of work in the field of line soccer did not begin on a Friday (2) but since the accident occurred on Friday the children would, and therefore did, have ‘1 at least two or three days of playing the game before Friday Moreover, on her examination before trial, she had testified that the class only attended gymnasium three times a week and when asked whether it had played soccer on each of such days she had answered: “ It is very difficult to say once or twice a week ’ ’, so that the strength of the intended inference is inevitably diluted. But in any case, excluding the date of the accident, the class could have had only two prior days of play that week, and there is no evidence detailing “ the instructions * * * given on previous days ”, nor is there any evidence that the performance of one or more of the players was ever critiqued during or after a game, with a view to perfecting skills or avoiding danger of injury to themselves or others. All that appears is that the teacher would ‘ ‘ go over the rules ” and review them “ every time ” a game was played and that the one variance employed by the teacher favored participation by eight students at a time, as ‘ ‘ forwards ’ ’.
On plaintiff’s side of the case, an expert witness gave it as her opinion that the avoidance of danger of accidents from a youthful propensity to be thoughtless about restraints in bodily contact sports requires a restriction, in line soccer, to no more than two people “ on the ball ” at any one time. Based on her studies in the field, observation and both personal and “ exchanged ” experience (recounted by teachers at conventions, etc.) she testified that the accepted custom and usage is to give the members of the respective teams consecutive numbers so that when a number is called only two children at a time run out and converge upon the ball. Elsewhere than in New York City, the limit to two contenders on the initial kick is invariable, without regard to whether the game is played in, or out-of-doors, and irrespective of the age of the players, even in situations where, with coaching, no more than four advanced players are used, two as guards and two as forwards, to concentrate on passing and team work. She did not agree with the approval given by defendant’s syllabus to the use of more than two forwards under any circumstances. It was her opinion that before children are put into this type of game at all, they should be given experience in kicking, dribbling and passing, particularly at the junior high school level.
On defendant’s side of the case, its director of physical education testified, in substance, that the “ sufficient skill ” condition *418 of the syllabus was “ not a mandate ”; that children are naturally skilled in running and kicking, and they do not have to be taught such things. But under cross-examination, he changed his position. The skill referred to in the syllabus, he then said, was “ skill in controls ” such as controlling the ball and the technique of managing “ a small kick so as not to kick somebody else in the way and so on, those controls that the teacher must have to keep this a safe game ” but, he grudgingly admitted, that “ takes some time ’ \ In the course of her testimony, the teacher admitted devising her numbering system so that at least six girls would come out on each play. In her opinion the “ sufficient skill” required by the syllabus could be acquired “in one session or fifteen minutes ” if the instruction on dribbling were omitted, but what, if anything she did about communicating the niceties of the kicking, running, dodging and changes of pace and direction that defendant’s director of physical education regarded as ‘ ‘ the whole game ” or to better their ‘ ‘ skill in controls” that “keep this a safe game” nowhere appears, although defendant was made aware of a claim for the consequences of its alleged negligence within 90 days after the accident and ordinary prudence should have impelled it to collect and preserve the teacher’s plan book and other evidence by which the length and nature of the instruction actually given could be proved. Admittedly, the teacher kept a plan book * but apparently it was not preserved for use as evidence. The shortcomings of the defendant’s case do not, of course, entitle plaintiff to a recovery, but their reflection on the credibility of professional people who are supposed to exemplify the basic virtues, cannot be avoided. The consequence is a persuasion that neither they nor the plaintiff were completely candid at the trial.
Plaintiff was impeached by her pretrial deposition in which she made no mention of pushing and shoving. Her witness is interested through friendship. The inconsistency justifies a conclusion that the trial testimony as to the pushing and shoving was untrue, but that plaintiff’s testimony that she had been kicked before she fell was true, and that she fell because of the kick. That she molded her claims to the supposed legal needs of her cause when the concepts of legal liability varied, seems clear. Yet, the fundamental undisputed facts are that she was injured in the course of a compulsory activity, approved and assigned as part of her education, an activity or game, which, *419 when played by relative novices, in the manner concededly directed by the teacher, is dangerous.
In this case, the opposing teams were 50 feet apart with the ball put in play midway between them. At most, they had had but two prior periods involving the game (although I credit plaintiff’s testimony that this was the first time she had been in such a game), and, as has already been noted, defendant offered no evidence of the particulars of any instruction in playing it. The absence of a plan book curtailed the teacher’s examination in the area but her numbering system — and her evasion of its disclosure on her examination before trial — support the conclusion that her primary concern was with the active participation of as many students as practical and not with their proficiency or safety. And while this court is not necessarily bound by the defendant board’s judgment of standards for safe practices and due care, it is nonetheless significant that its syllabus conditions the use of more than two opposing “ forwards ” on their prior acquisition of “ sufficient skill”. That such skill includes controlled kicking, running, dodging and change in pace and direction and that their advancement “ takes time ” was acknowledged by defendant’s director in his testimony under cross-examination. In the light of that admission, the professional stature of plaintiff’s expert is confirmed and her credibility enhanced. And besides, her judgment (in effect) that children should not be put into this game at all until they have been drilled and practiced in its skills, is supported by common sense and experience (see, e.g., Brooks v. Board of Educ. of City of N. 7., 29 Misc 2d 19, affd. 15 A D 2d 495).
In that case the jury found for the plaintiff and I refused to set the verdict aside. The facts there were somewhat similar, though less aggravating, than in the case at bar. There, the facts showed that “while the infant plaintiff was a student in the seventh grade, he was kicked by another boy during the playing of a game described as soccer, as a result of which he was knocked to the floor and struck the back of his head.” (29 Misc 2d 19.)
While it is true that in that case the contestants were improperly matched infants ” as to size and weight, the ratio decidendi was that “the Board of Education, during the hours when it had the custody and control of the infant plaintiff as its student, had a duty to act toward him in a sane and sensible fashion ” (id., p. 20) and that “ to demand and require that infants engage in such a dangerous ‘ sport ’ simply does not make sense and when it results in injury to a student the entity which causes it should be held to strict accountability.” (Id., pp. 20-21.)
*420 The teacher’s testimony that the necessary skill to play the game can be developed in one session is rejected as incredible and there is no better foundation for a conclusion that they were actually promoted or, for that matter, that there was any effort at all to improve them before the occurrence that resulted in plaintiff’s injury. To the contrary, the evidence requires a conclusion that, by direction of the teacher, from six to eight novices, including plaintiff, converged on the ball, at a run, in two numerically equal — or nearly equal — groups and, on pieeting, kicked away, inexpertly and without either self-imposed or externally visited restraint, in a lively effort to gain its possession and that during the action plaintiff was ldcked by another player and was injured as a direct or indirect result of the kick.
That an injury would result to someone from the melee ensuing on such occasions was, if not inevitable, at least reasonably foreseeable. To permit such a large aggregation of novices to engage in such a dangerous sport evidenced a complete disregard by the teacher for the safety of her pupils — although her motive, thus to enable more girls to participate in the game, is understood and appreciated.
In discussing the provisions of the defendant’s syllabus, I have not made mention of the fact that this so-called sport of line soccer was by the syllabus designated as an activity for boys only. If the game, improperly supervised, controlled and directed, is dangerous to boys, how much more so is it when the evident rules of safety are disregarded and violated with girls as the participants.
As the foregoing makes evident, I find that the defendant was negligent in permitting the game to be played under the circumstances portrayed in this record; that the infant plaintiff was injured as a direct consequence of such negligence, and that she — as an involuntary participant in the game — was free from contributory negligence.
The infant plaintiff sustained an incomplete greenstick fracture of the right tibia, with no displacement of fractured fragments. The hospital records make no mention of any bowing of the right leg, but assuming the testimony of plaintiffs’ expert to be correct in this regard he admitted that the bowing had ‘ ‘ no functional effect ”, was “ not discernible to the naked eye ” and “ doesn’t affect the appearance of her leg ”. The hospital bill for five days ’ treatment was $91.80, and no other special damages were claimed. Under the circumstances an award to the infant plaintiff of $4,000 and to the other plaintiff of $100 would seem both fair and adequate.

 Defendant’s rules and procedures for preparation of the book (advance-plotting of work to be done) and its submission for approval by the teacher’s superior, were not specifically explored during the trial.