Allen Murray Myers, J.
Plaintiff, a steamfitter employed by a subcontractor in the construction of a 40-story office building, was injured when a personnel-material hoist fell more than 20 stories to the bottom of the shaft. He brought an action to recover damages against the general contractor (Diesel) who undertook to and did in fact furnish, maintain and operate the hoist for the use of the employees of all of the subcontractors on the job; the subcontractor (Chesebro), to whom the general contractor had subcontracted the job of furnishing, installing and maintaining the hoist and the shaft or hoist tower; the sub-subcontractor (White) from whom the subcontractor, Chesebro leased the hoist and to whom Chesebro subcontracted the duty of maintaining the hoist in a safe operating condition; and the subcontractor (Construction) to whom the general contractor had subcontracted the operation of the hoist.
Plaintiff brought this action against the defendants on theories of common-law negligence, violation of subdivision 1 of section 200 and sections 240, and 241 of the Labor Law in effect on July 13, 1967, the date of the accident, and breach of warranty. But plaintiff abandoned the theory of breach of warranty.
At the trial on the issue of liabilty only, the court charged the jury with common-law negligence, violations of subdivision 1 of section 200 and section 241 of the Labor Law (by consent reserved to itself the issues of the general contractor’s violation of section 240 of the Labor Law the cross claims of the *688 defendants among themselves) and submitted to the jury the following interrogatories which it answered as indicated:
1) Was the malfunctioning of the hoist caused by any or all of the following: (a) A defective brake? Answer — Yes (b) A defective bottom final limit switch? Answer — Yes (c) Defective operation, the failure to apply the switch to actuate the emergency brake? Answer — No
2) Did the defendant, White Personnel-Material Hoist Co., Inc. furnish to the construction job, by lease to the defendant Chesebro-Whitman Co., a hoist containing (a) A defective brake ? Answer — No (b) A defective bottom final limit switch ? Answer — No
3) Did the defendant Chesebro-Whitman Co. furnish and install at the construction job, pursuant to a contract with the defendant, Diesel Construction, a hoist containing (a) A defective brake? Answer — No (b) A defective bottom final limit switch? Answer — No
4) Did the defendant, Chesebro-Whitman Co. know or in the exercise of reasonable care should it have known that the hoist which it furnished was defective? Answer- — -No
5) Did the defendant, White Personnel-Material Hoist Co., Inc. know or in the exercise of reasonable care should it have known that the hoist which it leased to Chesebro-Whitman Co. was defective? Answer — No
6) Did White Personnel-Material Hoist Co. Inc. maintain the hoist after it was installed at the job site in a reasonably safe condition? Answer — No
7) Did the defendant, Diesel Construction know, or in the exercise of reasonable care should it have known that the hoist was defective? Answer — No
The jury returned a general verdict only against the defendant, White and by the answers to the interrogatories found that the malfunctioning of the hoist was caused by a defective brake, a defective bottom switch, and by White’s defective maintenance.
Upon the motion of White and upon the court’s own motion the court set aside the verdict in favor of Diesel and directed a verdict -against it as a matter of law. (See Sarnoff v. Charles Schad, Inc., 22 N Y 2d 180.)
A verdict was directed against Diesel on the grounds that as a general contractor who had undertaken to furnish, maintain and operate a hoist for the use of employees of its subcontractors, it could not avoid its common-law and statutory duties by the simple expedient of delegating -this obligation to another subcontractor. (Besner v. Central Trust Co., 230 N. Y. *689 357; Rumetsch v. John Wanamaker, New York, Inc., 216 N. Y. 379; Sciolaro v. Asch, 198 N. Y. 77; Stott v. Churchill, 15 Misc. 80, affd. 157 N. Y. 692; Hanley v. Central Sav. Bank, 255 App. Div. 542, affd. 280 N. Y. 734; Chandler v. Glaser Contr. Co., 80 N. Y. S. 2d 502.)
The courts have so held because an elevator, which a personnel hoist really is, is fraught with obvious danger if not properly maintained.
Sections 200 and 241 of the Labor Law (as of 1967) were merely codifications of the common law which required a general contractor to provide his subcontractors and their employees with a safe place to work and safe ingress and egress or ways and approaches thereto. (Butler v. D.M.W. Contr. Co., 286 App. Div. 828, affd. 309 N. Y. 990; Iacono v. Frank & Frank Contr. Co., 259 N. Y. 377; Caspersen v. La Sala Bros., 253 N. Y. 491; Gambella v. Johnson & Sons, 285 App. Div. 580.) The hoist provided by Diesel was a means of ingress and egress.
Proof of notice of an unsafe condition, actual or constructive, is a prerequisite to the imposition of liability under sections 200 and 241 of the Labor Law. (Schnur v. Shanray Constr. Corp., 31 A D 2d 513; Zinsenheim v. Congregation Beth David, 10 A D 2d 501; Zaulich v. Thompkins Sq. Holding Co., 10 A D 2d 492; Dittiger v. Isal Realty Corp., 264 App. Div. 279, revd. on other grounds 290 N. Y. 492; De Luca v. Fehlhaber Corp., 38 Misc 2d 184.) Since the jury found that Diesel neither had actual nor constrimtive notice of the dangerous condition of the hoist, liability to the plaintiff could not be foisted upon it were it not for the fact that Diesel’s duty to furnish the plaintiff with a reasonably safe hoist was nondelegable. Diesel could not escape liability for the failure of White to maintain the hoist in ’a reasonably safe condition merely because Diesel had delegated the duty of maintenance to a subcontractor who had delegated it to White. Therefore, as a matter of law, Diesel must be held liable to the plaintiff for the breach of its nondelegable duty to furnish the plaintiff with a hoist in a reasonably safe operating condition.
I also find as a matter of law that Diesel violated section 240 of the Labor Law. A violation of this statute makes one absolutely liable to the class of persons for whose benefit the statute was enacted without regard to the principles of negligence. (Sarnoff v. Charles Schad, Inc., 22 N Y 2d 180, supra; Quigley v. Thatcher, 207 N. Y. 66; Koenig v. Partick Constr. Corp., 298 N. Y. 313; Tully v. Roosevelt Props., 34 A D 2d 786; Galbraith v. Pike & Son, 18 A D 2d 39.)
*690 In the case at bar Diesel furnished the hoist in question for the use of its subcontractors and their employees, of which the plaintiff was one. The plaintiff was thus required by Diesel to use the hoist to get to and from his place of work. Plaintiff was compelled to use the hoist for there was no other practical way to get to and from the 38th floor where he was working. Diesel furnished the hoist because it was obviously necessary for the efficient performance of the work of construction. I can see no material difference between the factual pattern in the case at bar and that in Sarnoff v. Charles Schad, Inc. (supra) except that in Sarnoff the general contractor had furnished “ scaffolds to he used in the work and, thereby, impliedly required the workmen to use them” (p. 185), whereas in the case at bar the contractor had furnished a hoist. Section 240 specifically mentions the furnishing of hoists as well as scaffolding and “ other devices which shall he so constructed * * * and operated as to give proper protection to a person so employed or directed.”
The hoist was a most necessary and integral part of the work of construction. Without it the furnishing of men and materials when and where needed would become impossible and construction would come to a halt. In Tully v. Roosevelt (34 A D 2d 786, supra), a general contractor was held liable to an employee of a subcontractor who was injured by a defective material hoist even though a subcontractor owned the well-wheel and rope. If anything, more care should be taken with a personnel hoist, as here involved, where lives are at stake. As stated in Quiglep (207 N. Y. 66, 68, supra): “ This statute is one for the protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed.” Diesel’s argument that .section 240 only covers material hoists and not personnel hoists makes a mockery of the statute whep. one considers that the statute’s purpose was to safeguard workingmen from injury from faulty equipment furnished them in construction or demolition work which they have no choice but to use. Accordingly, Diesel is held to be liable to plaintiff for violating the absolute duty imposed upon it by section 240 of the Labor Law to furnish plaintiff with a reasonably safe hoist. Section 240 is not applicable to White because White neither .employed plaintiff nor directed him to use the hoist in his work.
Interlocutory judgment on the issue of liability only may therefore be entered in favor of the plaintiff against the defendants Diesel and White and dismissd as against the others.
*691 We now come to the interesting issues raised by the cross complaint of Diesel against "White for indemnification based on common-law principles of implied or quasi-contract since there was no express indemnification agreement between them. “ Indemnity is given to the person morally innocent but legally liable, as against the actual wrongdoer whose misconduct has brought the liability upon him.” (Bohlen, Studies in the Law of Torts, p. 512; see, also, Westchester Light Co. v. Westchester County Small Estates Corp., 278 N. Y. 175).
Until overruled by the decision in Dole v. Dow Chem. Co. (30 N Y 2d 143), the courts have held that a joint tort-feasor is barred from recovering indemnification from another joint tortfeasor unless the former was only passively or secondarily negligent while the latter was actively or primarily negligent (Jackson v. Associated Dry Goods Corp., 13 N Y 2d 112; Colon v. Board of Educ. of City of N. Y., 11 N Y 2d 446; Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426; Putvin v. Buffalo Elec. Co., 5 N Y 2d 447; McFall v. Compagnie Maritime Beige, 304 N. Y. 314).
Now, the law has been changed so that one active joint tortfeasor may recover indemnification from another active joint tort-feasor. A finding of “active-passive” negligence as a prerequisite for a judgment of indemnification has been rejected by the Court of Appeals.
The new rule established in Dole v. Dow Chem. Co. (30 N Y 2d 143, 150, supra), permits “indemnity where a party ‘ was less culpable than the principal wrongdoer, although both are equally liable to the person injured. ’ (42 C. J. S., Indemnity, § 27, subd. b, p. 606, and cases assembled under n. 30).”
The trier of the facts must now determine the difference in the degree of wrong committed and apportion responsibility among the joint tort-feasors accordingly. “1 The deciding factor, then, should be fairness as between the parties ’ (81 U. of Pa. L. Rev., p. 159, op. cit.). (See, also, Report of New York Law Revision Commission [1952], pp. 21-63, op. cit.).” (Dole v. Dow Chem. Co., supra, p. 151.)
As stated by the court in Dole v. Dow Chem. Co. (supra, p. 153) the new rule is as follows: “ Right to * * * indemnity, then, as among parties involved together in causing damage by negligence, should rest on relative responsibility and may be determined on the facts.
‘ ‘ If tried together before a jury, the instruction would be to consider the third-party plaintiff’s cause over only if that party were found negligent; and if that were found, the remedy *692 would depend on the proportion of the blame found against third-party defendant. There might, of course, be a finding leading to no apportionment or to full indemnity.” (See, also, Wood v. City of New York, 39 A D 2d 534).
As the trier of the facts and the law of the cross complaint of Diesel against White, I must determine the relative responsibility of the parties and apportion the blame for the accident.
Under the rule as it was applied prior to Dole v. Dow Chem. Co. (supra) Diesel would have been entitled to a judgment over against White on the common-law negligence aspects of the case (that is, excluding its absolute liability under § 240 of the Labor Law). That is so because to use the old phraseology, White was actively or primarily negligent while Diesel was only passively or secondarily negligent. However, for Diesel’s responsibility under section 240 of the Labor Law, Diesel would not have been entitled to a judgment over because a violation of that statute would have made Diesel an active or primary tortfeasor. (Koenig v. Patrick Constr. Co., 298 N. Y. 313, supra; Semanchuck v. Fifth Ave. and 37th St. Corp., 290 N. Y. 412; Tully v. Roosevelt, 34 A D 2d 786, supra.) Therefore, before Dow, I would have been constrained to dismiss Diesel’s cross complaint against White.
However, under the new rule, the “ active-passive ” criteria for judgment over has been rejected. Applying the new criteria of relative responsibility I find from the evidence that the sole responsibility for the accident was that of White. There was no evidence that Diesel was negligent in the employment of its subcontractors; that is, that it knew or should have known in the exercise of reasonable care that White did not have the necessary skill and experience to maintain the hoist in a reasonably safe condition. The jury absolved Diesel from any common-law negligence and found that only White was negligent and that its failure to maintain the hoist in a reasonably safe condition was the proximate cause of the accident. White was under a duty to inspect the'hoist at such intervals as a reasonably careful and prudent maintenance company would make in accordance with “ the risk reasonably to be perceived ” under the circumstances. Implicit in the jury’s verdict is a finding that had White not neglected that duty of inspection White would have discovered the defective brake and switch before the accident had occurred or that White had in fact discovered the .defects and failed to make the necessary repairs or discontinue the use of the hoist to prevent the accident. Under any theory Diesel must be held to be blameless. Accordingly, I find that Diesel is entitled to full *693 indemnity from White and grant judgment over in favor of Diesel against White as demanded in the cross complaint. All other cross complaints are dismissed. The action on the issue of damages is set down for trial before Mr. Justice Goodman in Part 66, on June 7, 1972.