Albert A. Blinder, J.
These are tort claims to recover for personal injuries sustained by Shelli Segal while a student at the College at Purchase, State University of New York, on December 7, 1972. The claims were timely filed by her father, Gerald Segal, as her natural guardian and individually.
Shelli Segal was a freshman at the School of the Arts, College of Purchase. She was attractive, artistic and had been an honor student in high school. Upon matriculating at the university, she enrolled in a course known as £ ‘ Design in Three Dimensions. ’ ’
The course, as described in a course description distributed to the students during the first or second week it met, was a practical study of the elements of space. Students were to investigate the properties of various materials and utilize a variety of tools in the design and construction of assigned problems.
During the course of Shelli’s work on one of her projects and while using a power saw, she amputated her left index finger, suffering, in addition, severe lacerations on her left hand and other injuries related to the traumatic amputation.
*530 It is asserted that the defendants (State of New York and State University of New York) are chargeable with negligence. This negligence is allegedly predicated on several grounds which are basically enumerated as a failure to supervise, promulgate and enforce rules and regulations and give proper instructions to the claimant regarding the use and operation of the power tool. It is also alleged that the saw itself was inherently dangerous and hazardous. Additional allegations of tort are founded on the defendants’ failure to provide a safe place to perform her work and' the defendants’ violation of the Labor Law.
The defendants defend with legal arguments not unexpected in tort cases similar to the matter at bar. It is declared that the claimants had failed to show ¡Shelli’s freedom from contributory negligence. It is also argued that Shelli voluntarily assumed the risk by using the power saw, especially when she had another means available to her to accomplish her object; i.e., by using an ordinary hand saw. It is further submitted to the court that the Labor Law is not applicable herein and therefore the standard of care and duty required by the common law remains unchanged.
We agree with the defendants and dismiss the claims for the reasons hereinafter discussed.
Subdivision 1 of section 200 of the Labor Law provides: “ All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.” (Emphasis supplied.)
Judicial interpretation of section 200 of the Labor Law has uniformly held that it is but a statutory codification of the common-law duty owed by employers to furnish a safe place to work for employees. (Rusin v. Jackson Hgts. Shopping Center, 27 N Y 2d 103; Schnur v. Shanray Constr. Corp., 31 A D 2d 513.)
This is not to say that there are no instances in which the Labor Law has been held applicable to those other than employees. In Weber v. State of New York (53 N. Y. S. 2d 598) section 240 of the Labor Law was held applicable to a student at a State school who was injured when he fell froto, a scaffold *531 erected in the course of study in a carpentry class. However, a violation of section 240 of the Labor Law makes one absolutely liable to the class of persons for whose benefit the section was enacted without any regard to the principles of negligence. (Kelly v. Diesel Constr., 70 Misc 2d 686.) There is an absolute duty to furnish a safe scaffold (Rocha v. State of New York, 77 Misc 2d 290) and therefore contributory negligence would not be a defense to an action based on a violation of this section. (Galbraith v. Pike & Son, 18 A D 2d 39.) This is not the case with section 200 of the Labor Law which only creates a general duty to protect the health and safety of employees. (Employers Mut. Liab. Ins. Co. of Wisconsin v. Di Cesare & Monaco Concrete Constr. Corp., 9 A D 2d 379.)
The cases cited by the claimants as authority for the application of section 200 of the Labor Law are factually distinguishable from the matter before the court. Edkins v. Board of Educ. of City of New York (287 N. Y. 505) involved an analysis of the Labor Law, but only to further interpret requirements placed on the defendant board df education by the Education, Law. De Benedittis v. Board of Educ. of City of New York (271 App. Div. 886) did not involve any discussion of the Labor Law but involved negligence predicated on lack of supervision, as did the case of Govel v. Board of Educ. of City of Albany (267 App. Div. 621).
Section 200 of the Labor Law was enacted to protect a specific class of people. The injured claimant does not come within the ambit of this class. Clearly, she was not an employee of the State. The testimony clearly establishes that she was not required to use the power table saw and, moreover, was not given permission to use it.
The claimants would have the court hold the defendants liable in negligence for its failure to properly supervise the activities of ¡Shelli. It is argued that there was a duty to exercise care to prevent injuries such as occurred and that duty was breached, constituting actionable negligence on the part of the State. That a duty exists in law is well established. It is the duty of a teacher to exercise reasonable care to prevent injuries; to assign pupils to such exercises as are within their abilities and properly and adequately supervise their activities. (Miller v. Board of Educ., Union Free School, Dist. No. 1, Town of Albion, 291 N. Y. 25; Govel v. Board of Educ. of City of Albany, 267 App. Div. 621, supra.)
The claimant was injured at abo'ut 8:00 p.m. in the evening when she was working in a shop adjacent to the classroom, *532 constructing a sketching stool. The stool was an assigned project. After lectures were given on the theory of the course by Professor Robert Grolder, the practical lessons on the use of tools and materials required to complete the problem were given by an instructor, Jeremy Lebensohn. The lectures were given by both lecturers during the day and the students generally worked on their projects at night.
During the evening of the mishap, a paid student assistant was present in the shop who had been selected on his ability to instruct in the use of tools, besides undertaking numerous other shop duties such as cleaning up after hours.
Each student was required to provide his or her own hand tools. In the room used as the shop there were three power tools, the electric saw which caused the injury, an electric drill and an electric sander. It appears that the power table saw was the property of Jeremy Lebensohn, who brought it onto the school premises with the permission of the dean of the school.
Mr. Lebensohn testified and the court so finds that, in addition to the student assistants, only those students specifically authorized to use the power saw were permitted to use it. The authorization, which was verbally given, was given only after personal instruction on how the saw operated, how it was adjusted and how it was to be used. Mr. Lebensohn testified that prior to specific authorization he would verbally instruct the student, operate the saw himself, and then assist him or her in its operation. Even then, these instructed students were not to use the saw alone. He testified: “they Would have to use it many, several weeks in many, many times with myself or assistant who I had authorized to instruct.” Although a general lecture was given to the class on the use of the saw, that was not the personal instruction sufficient for authorization to use it. No personal authorization was ever given to Shelli to use the power saw. It would also appear from the testimony that the claimant was not present in class during the general lecture pertaining to the operation of the saw. Mr. Lebensohn testified that “ one of the first things that I said in specific reference to the saw was that it was not to be used.” “ Only were those who had been authorized by myself” (were to use it). He also testified that he instructed his student assistants that the students were not authorized to use the saw and that the student assistants were to use it when its use was required.
From Shelli’s own narrative of the facts, it appears that she asked the student assistant for help and he complied; turned on the saw, ran her piece of wood through and then turned it *533 off and went back to Ms own project. She, however, “ took the pieces to work on them further to make them into my design.” She continued, “ I did it the way I saw Wes Wach do and the accident happened.”
There is no factual dispute that Wes Wach, the student assistant, was the only representative of the school in the classroom at the time of the mishap. Mr. Wach had, prior to the night the accident occurred, cut wood for the claimant on the saw for another project. There is notMng in the record to indicate that he was not available to make any additional cuts with the power saw, if requested by the claimant.*
Under these facts, we cannot say that the State was derelict in its duty of supervision. (Cherry v. State of New York, 42 A D 2d 671.) The facts indicate an adequate degree of supervision was provided by furnishing an experienced and competent man, the student assistant, to help students with problems. (Cf. Brittan v. State of New York, 200 Misc. 743.) Shelli was not required or authorized to use the saw. (Johnson v. Board of Educ. of City of Hudson, 210 App. Div. 723, 725.)
In the Johnson (supra) case the court stated (p. 725) “ the defendant had no reason to apprehend that [she] would try to use [the saw].” This is true even though it appears that Shelli had once before made unauthorized use of the machine; yet tMs was unknown to the defendants in the case at bar as it was in the Johnson case.
Another strikingly similar case is Oakley v. State of New York (38 A D 2d 998, affd. 32 N Y 2d 773) which involved an injury to a minor from a joint-planer machine. The Appellate Division reversed a judgment stating, inter alia (p. 999), “ Claimant was injured in a brief period of one or two minutes wMle operating a machine upon which he had no instruction, had not previously used, and had no authorization to use * * * The record does not indicate any failure on the part of the instructor to properly observe or supervise the students.”
Even if the court were to find a breach in the defendants’ duty to Shelli, the claims would have to be dismissed because of the injured claimant’s contributory negligence. Contributory negligence is defined as such negligence as co-operates in causing the injury, some concurring act or omission of the plaintiff to produce the injury, not the loss merely, and without wMch the injury could not have happened. (Du Bois v. Decker, 52 Hun 610.) It is conduct on the part of the claimant wMch *534 falls below the standard to which she should conform for her own protection. (Hunt v. Schultz, 21 A D 2d 743.)
The claimant was bound to see what, by the proper use of her senses, she might have seen. (Weigand v. United Traction Co., 221 N. Y. 39.) The court finds that a reasonable person would not have used the power table saw unless one first received proper instruction on its use. Shelli testified that she turned the machine on and ran the wood thfough the way she saw the student assistant cut wood. A reasonable, prudent person would not have used the saw without more familiarity with its operation. Clearly, the machine did not appear to be anything but dangerous. Approximately six inches of the blade were exposed. When the saw was put on it was, in the claimant’s words, “noisy” and turning fast. The claimant was attempting to make a cut diagonally across a strip of wood and demonstrated that she held it with her fight hand and with her left hand holding the left-hand corner of the piece which was to be cut, one inch from where the blade would be cutting the wood at the closest point.
Another reason for dismissing the claim is the assumption of risk on the claimant’s part, She did not have to use the power saw. There were hand saws available which were much safer and which she knew how to use, for she was instructed on their use two weeks prior to the accident.
More importantly, the student assistant was there to assist. In fact, Shelli had just asked Mr. Wes Wach to cut wood for her on the saw to her specifications. She instead decided to operate this machine herself. Even the best designed power table saw with all possible safety devices must be considered dangerous. Shelli must have realized the possibility of injury when she turned the machine on. (Conroy v. Saratoga Springs Auth., 259 App. Div. 365, affd. 284 N. Y. 723.)
The defendants’ motion to dismiss the claims is granted.

 Other than the fact that he was working on a project of his own.