[Civ. No. 16888. First Dist., Div. One. Nov. 19, 1956.]

JAMES JACOB GROVER, Respondent, v. SAN MATEO JUNIOR COLLEGE DISTRICT OF SAN MATEO COUNTY (a Corporation), Appellant.

Keith C. Sorenson, District Attorney, Wallace & Parker and Charles F. Parker for Appellant.

J. Adrian Palmquist and Francis T. Cornish for Respondent.

PETERS, P. J.—Respondent, while a student at San Mateo Junior College, was seriously injured when an airplane in which he was riding crashed. The plane was then being operated by Harry D. Cranston, Jr., who ran a flying school under the name of Cranston Air Service. The flight in which respondent was injured was arranged and paid for by the college, being a noncompulsory part of an aeronautics course given by the college and in which respondent was enrolled. Respondent brought this action against the college district and Cranston. The jury brought in a verdict of $100,000 against both defendants. On motion for a new trial respondent agreed to a remission of part of the judgment so as to reduce it to $75,000. From that reduced judgment the college district appeals.

It is conceded on this appeal that the implied finding of the jury that the crash was proximately caused by the negligence of Cranston in the operation of the plane is supported by the evidence. The sole contention of appellant is that Cranston was not the employee of appellant, but an independent contractor for whose negligence appellant is not responsible. Appellant recognizes that to prevail on this point it must establish, as a matter of law, that Cranston was an independent contractor, and that, insofar as the question is one of fact, it has been adversely decided against it by the jury.

It is admitted that appellant's liability, if any, is predicated upon section 1007 of the Education Code. That section imposes liability on any school district "for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers, or employees," where a claim has been filed. A claim was here filed.

The partial reporter's transcript contains the following evidence relating to the issue involved:

Respondent at all times here relevant was a student at appellant college, enrolled in a course entitled "Aeronautics I." That course was described in the official catalogue of the college as follows:

"Objective: To give a general background to the subject of Aviation.

"Content: History of aviation, aircraft structures and problems of flight, navigation and meteorology for an air-age world, community problems, vocational problems, national and international aspects of aviation. Flight experience will be provided for those who have not flown previously."

Respondent testified that he was interested in aeronautics; that he intended to follow it as a career; that this affected his choice of San Mateo Junior College as a school; and that the opportunity for flying led him to enroll in the course here involved. Flight training was an integral, but optional, part of this course. Grades in the course were in no way dependent upon taking the flight. Students were graded the same whether or not they took the flight.

The instructor in the course was George Van Vliet, admittedly an employee of the appellant. He was a qualified pilot, with a special secondary teaching credential in aviation, and was licensed as a commercial flight instructor. Prior to making the arrangement with Cranston, he had taken students up in planes rented by the appellant school district, because the college never owned any planes. The purpose of the flights was to give the students a practical demonstration of the theories that they had learned in the classroom. Because, after 1950 or 1951, Van Vliet no longer had the time to fly the students in a rented plane, arrangements were entered into with Cranston to conduct these orientation flights. These arrangements were made by Van Vliet on behalf and with the approval of appellant, and the appellant paid Cranston for the services rendered. The arrangement between Van Vliet and Cranston was that the latter would be paid by appellant $5.00 per hour per student, that there would be three students in each flight, and that each flight would be planned to cover about three hours. The length, nature and general coverage of the flights were worked out by Van Vliet and Cranston at the beginning of the relationship. They talked over what things Cranston should cover in the indoctrination of these students, so that the practical demonstration would fit in with

the theory discussed in class. Van Vliet told Cranston that he considered the cross-country flight a "valuable" part of the course. It was agreed that the time of the flights would be arranged between Van Vliet, the students, and Cranston, so as to fit everyone's convenience. The students were to select the place they would like to go and, under the general supervision of Van Vliet, were to make up a flight plot. Cranston, however, was empowered to alter these plans if flying conditions did not warrant carrying out the flight as suggested by the students. Van Vliet did not go along on these flights, but, normally, when three students determined when and where they wanted to go, Van Vliet made the arrangements.

These arrangements between appellant and Cranston were oral. Customarily, Van Vliet would prepare a list of the students who wanted to take the flights and then send it to appellant's business office. That office would issue a work order authorizing the flights. After the flight Cranston or his company would send in a bill and this bill, periodically, was paid by the college district.

Cranston was a licensed flying instructor approved by both the Civil Aeronautics Administration and the State Department of Education. As already pointed out, he operated as the Cranston Air Service.

On the particular flight here involved, the three students, including respondent, decided upon the day they would like to go, and communicated this fact to Van Vliet, who made the arrangements with Cranston. The students worked out in class a detailed flight plan under Van Vliet's supervision, but, when they arrived at the airport, Cranston, because of adverse weather conditions in the area plotted, suggested a change in route which was agreed upon by the students. They took off in the plane and followed this new flight plan, Cranston explaining the operation of the plane, permitting the students to fly it in the air, and discussing with them the other matters agreed upon with Van Vliet. As a result of the negligence of Cranston in the operation of the plane, it crashed, and respondent was injured.

On these facts, the sole question now presented is whether Cranston, as a matter of law, was an independent contractor for whose negligence appellant is not liable.

Much has been written on the subject of what facts make a person an independent contractor and what facts make him an employee. There are many things to be considered. The problem most frequently arises either under the workmen's

compensation or similar law, or in tort cases where it is sought to impute the negligence of one person to another. While the same general test to determine the nature of the relationship is used in the various situations involved, it is quite clear that the emphasis to be placed upon any particular factor may vary, dependent upon which of the two general situations is being considered in the particular case. Certainly, the public policy and legislative purpose behind the workmen's compensation act are different from those behind statutes such as section 1007 of the Education Code imposing liability on school districts for the negligence of its employees. In the tort situation a very important question may be the relationship between the person injured and the one sought to be held as an employer, a problem not usually present in the normal workmen's compensation case.

In the present case, the relationship was between a student enrolled in a regular college course and the college that conducted that course. While the flying part of the course was not compulsory, it was clearly an integral and regular part of the course, an inducement to take the theory part of the course, and was paid and arranged for by the college. So far as the students were concerned, Cranston was just as much the instructor in that class as was Van Vliet. The students did not seek, select, or solicit Cranston for the flight training. They went to the college, and, if they took this course, they had to take Cranston for this purpose. Cranston was offered to the students by the college as the instructor in the flying part of the course. No student had any right to designate or select who should teach them the flying part of the course, any more than they could select the teacher to teach the theory part of the course. The student depended upon appellant to select the flying instructor, and to arrange and pay for the flights. Thus, the furnishing of the flights was part of the school's function. From the students' standpoint, Cranston was in no different position than Van Vliet, who was admittedly an employee of the appellant. Thus, the fact that appellant made no income deduction from Cranston's compensation for social security or income tax, while a factor in determining how Cranston and appellant looked upon the relationship, is not conclusive in the over-all picture so far as respondent is concerned.

The parties argue as to whether or not section 1007 of the Education Code imposes liability on the district for negligent acts of ''agents'' of the college as well as ''employees.'' The

section imposes liability for the negligence of the "district, or its officers or employees" and does not specifically enumerate "agents." It can be argued that imposing liability on the "district" includes all manner of ways in which the "district," an artificial entity, can be liable, that is, by the acts of its "agents" as well as by the acts of its "officers or employees." This construction seems reasonable in view of section 3 of the Education Code which declares that the provisions of that code "are to be liberally construed, with a view to effect its objects and to promote justice." (See *Kline* v. *San Francisco Unified Sch. Dist.*, 40 Cal.App.2d 174 [104 P.2d 661, 105 P.2d 362].) Apparently the Legislature believed that section 1007 included a liability for the acts of "agents" because when it came to provide for the expenditure of public funds for insurance coverage for the liability created by section 1007 it provided for such coverage for "the negligent act by the district, or by a member of the board, or any officer, agent, or employee when acting within the scope of his office, agency or employment." (Ed. Code, § 1029.)

Regardless of this issue, however, it is quite clear that there is ample and substantial evidence to sustain the finding that, so far as section 1007 of the Education Code is concerned, Cranston was the employee of the appellant. All the cases concede that the basic question involved on this issue is the nature and extent of the control exercised by the one sought to be held as employer. (*Sudduth* v. *California Emp. Stab. Com.*, 130 Cal.App.2d 304 [278 P.2d 946] ; *Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33 [168 P.2d 686] ; *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34 [180 P.2d 11], and cases cited therein; see also Rest., Agency, § 220.)

In the instant case the evidence shows that the appellant district had sufficient "control" over Cranston to make him an employee. The control here involved is not the minute control over the actual operation of the airplane. The objective of the relationship was the orientation of the students to the principles governing cross-country flights, that is, to practically demonstrate some of the theories taught in the classroom. The evidence shows that the appellant district had the contractual right to determine how that was to be done, and what subjects Cranston should talk about to the students while on the flight. Had appellant desired to do so, it could have ordered flights over designated routes, subject to due considerations being given to the weather, and in other

obvious ways have controlled the method by which the desired result was to be obtained. In this respect the instant case is no different in principle from *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34 [180 P.2d 11], in which it was held that free lance jockeys, engaged separately for each race, were employees within the meaning of the Unemployment Insurance Act.

The legal and factual situation here involved is also not substantially different from that involved in *Smith* v. *Fall River Joint Union High Sch. Dist.*, 118 Cal.App. 673 [5 P.2d 930]. There the plaintiff was a high school student. The school furnished the students bus transportation, and plaintiff was injured while riding in the bus as a result of the negligence of the driver. This bus was owned and operated by one Fitzwater, who had a written contract with the district obligating him to transport students to and from the school, which contract was terminable at any time by the school district. It was held that the court properly submitted to the jury the question of whether Fitzwater was an employee or an independent contractor, and that its finding that Fitzwater was an employee was supported. The appellate court found the necessary control in the right of the school district to terminate the contract at will—a right clearly existent in the instant case. In so holding, the appellate court stated (p. 681) :

". . . The primary consideration which leads to this conclusion is the right reserved by the district to terminate the agreement at will. It is not the actual exercise of control, but the right of control—that is to say, the potential power of control—which is important in a determination of whether or not the status of an employee or independent contractor exists. [Citing a case.] A circumstance tending to negative the independence of the driver is the right to terminate the employment at any time. [Citing a case.] In *New York Indemnity Co.* v. *Industrial Acc. Com.*, 80 Cal.App. 713 [252 P. 775, 776] the court said: 'Coincident with the right of control is the right of either the employer or the employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right of control.'

"As was stated in the case of *Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 121 [210 P. 820, 823] : 'One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed. In the instant case

it is undisputed that the Press Publishing Company had the power to hire and the power to discharge its carriers for unsatisfactory service, and in this regard Benefiel was in no better position than the other carriers. *This power of discharge made obligatory any instructions given, for it gave to the Press Publishing Company the power to require obedience to those instructions and insured their being carried out.*'

''By retaining the power of discharge the district was virtually in a position to control every act of the driver.''

For the foregoing reasons the judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied December 19, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 16, 1957. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.