Donna DeMAURO, Plaintiff-Appellant,

v.

TUSCULUM COLLEGE, INC., Defendant-Appellee.

Supreme Court of Tennessee.

July 28, 1980.

Olen G. Haynes, Jean A. Stanley, Johnson City, for plaintiff-appellant.

N. R. Coleman, Jr., Greeneville, for defendant-appellee.

OPINION

HARBISON, Justice.

This case involves an action by a student against a private college for personal injuries sustained while she was receiving instruction in a physical education class. Plaintiff, a freshman and a beginner at golf, was struck by a golf ball driven by a senior student who was majoring in physical education and who was taking a course designated as "Teaching Assistant."

The jury returned a verdict for the plaintiff, appellant here, which was approved by the trial judge. The Court of Appeals, in a split decision, reversed and dismissed, holding that there was no material evidence of causative negligence. The Court held that while the accident was "an unfortunate occurrence" it was, as a matter of law, one for which the educational institution could not be held responsible.

After careful consideration, we are of the opinion that the Court of Appeals was in error in this regard and that a jury issue was presented as to the liability of the defendant. On the other hand, we find that there was error in certain jury instructions which were given and in the failure to give other instructions which were properly requested.

The jury instructions made no reference to the relationship between the plaintiff, as a student, and the defendant, as a private educational institution. Specific rights, duties and responsibilities attach to that relationship which are important in resolv-

ing the issues between the parties. Counsel for both parties waived final argument, and the jury received the case on very general instructions as to negligence and contributory negligence.

■ There was a disputed issue as to the status of the senior student whose golf ball inflicted the injuries. Plaintiff insisted that he was a servant or representative of the college in instructing an introductory course in golf, while the defendant insisted that he was simply a fellow student, somewhat more advanced, and that he was a person for whose negligence the college was not legally responsible. We are of the opinion that differing inferences could have been drawn from the proof offered on that subject. The trial judge, however, instructed the jury, as a matter of law, that the senior student was a servant or agent of the school and that it would be legally responsible for any negligence on his part. We find that this instruction, to which proper exceptions were taken, was erroneous. The status of that student was an important issue to one of the theories of liability asserted. We think that the jury should have been permitted to determine whether the senior was or was not an authorized representative of the school. Also, omitted from the instructions, despite proper requests, were the subjects of assumption of risk and of unavoidable accident, as to both of which some evidence had been introduced.

Plaintiff, Donna DeMauro, was eighteen years old at the time of the accident on March 31, 1977. She was entering the third quarter of her freshman year at Tusculum College, a private liberal arts college located near Greeneville, Tennessee. She was required to take courses in physical education during her first year, including one course each quarter in "Activities." During the spring quarter she had elected to take a course designated as Physical Education No. 171, entitled "Golf." This course was offered in the fall and spring quarters of each year, and the college provided a member of its staff, a Dr. Shasby, as the instructor for the course. Plaintiff had never played golf before, nor had she ever received any instruction in the sport. The college apparently does not have a golf course on its campus, but it had made arrangements for the students to play on a course operated by a local country club.

Dr. Shasby did not testify in the case. There is a paucity of information as to the type of instruction which he gave or as to the content of the accredited course for which plaintiff had enrolled. The total number of freshmen students taking the course does not appear in the record. The course was apparently offered one day each week for a period of two hours. Prior to the date of the accident, there had been a few sessions of the class. One of these was held in the gymnasium, where students were given some general instructions by Dr. Shasby and where they had practiced using golf clubs with plastic balls. Although it is not clear from the record, we infer that the students used golf clubs and equipment furnished by the college both at the gymnasium and later on the golf course. There is some reference in the testimony to the students' having been taken by Dr. Shasby to a driving range on one occasion prior to the date of the accident.

On Thursday, March 31, 1977, the students went to the golf course for the first time to engage in practice consisting of actual play on a regular course. Again the record is silent as to how many students went. Plaintiff was a member of a foursome, consisting of three other freshmen girls, only one of whom appears to have had any substantial previous playing experience. There is reference in the record to another group or groups of students, some of whom were accompanied by Dr. Shasby. Dr. Shasby was not with the foursome which included the plaintiff at the time of the accident.

In his place and stead a senior student, James Hunter, accompanied the four girls. Hunter was attending Tusculum College on an athletic scholarship in basketball. Golf was not his major sport. He had taken an introductory course in golf at a junior college a few years previously and had occasionally played the game, but the jury could

easily infer from the testimony that he was by no means an expert in the sport.

Hunter, who was twenty-two years of age, testified that he was majoring in physical education and that he took for credit during the spring quarter a course designated as Physical Education No. 400, entitled "Teaching Assistant." The college catalogue, which was introduced in evidence, described this course as follows:

"Offered as needed. Students will be expected to assist in all aspects of the instruction of an activity course and, on occasion, to conduct the class. Prerequisites: Senior or junior P. E. major status only, approval of the instructor and of the division chairperson."

Hunter described his duties as follows: "Get the clubs, take over if Dr. Shasby wasn't there, and helping with the class."

Hunter was not paid for his services, and it is clear that these services were a part of his own course of instruction in becoming a physical education teacher. Although the phrase was not used in the record, at oral argument it was stated that he might be considered as a sort of "practice teacher." He had assisted in a tennis class during the previous quarter but had never before assisted in instruction in golf. He testified that he had not played "a lot of golf" on his own since taking freshman instruction in the sport as previously mentioned. Plaintiff testified that she was not aware that Hunter "had little or no experience," that she knew he was a "student assistant" and thought "Jim perhaps knew about the game."

Hunter accompanied plaintiff and three other freshmen girls to the No. 5 tee on the Twin Creeks Golf Course near Greeneville. This was a 425-yard hole, bordered on the left by a creek. The rules of the course stated that a stroke to the left of the creek was out of bounds. As one faced the fairway, the green was to the left around a "dog-leg." A large tree was situated at the turn in the fairway. It would have been possible for a person driving from the men's tee, as Hunter undertook to do, to drive to the left of this tree in a straight line toward the green. The usual method of playing the hole, however, was to drive straight down the center of the fairway to the right of the tree. It is unclear from the record which way Hunter intended to drive, although he thought that he probably meant to drive to the right of the tree.

Hunter was a left-handed golfer. He approached the men's tee with the girls standing at about a ninety-degree angle opposite him and several yards away. All of them testified that they had generally been instructed to stand in this position. An instruction book in golf, which the students purchased, generally confirmed that this was the correct area for players to stand and watch in safety, or at least the jury could so conclude from the evidence.

There is little testimony in the record as to the manner or method in which Hunter struck the ball or as to what he actually did, except that he apparently "shanked" the shot, striking the ball with the toe of his driver. The ball veered off at an angle of about ninety degrees from the fairway, and it struck the plaintiff in the face. She received severe and painful injuries from which she suffered extensive bleeding and for which she had to undergo at least two different surgical operations about a year apart. She was given immediate first aid and assistance by Hunter and other persons. The degree and extent of her injuries and the amount of the jury award are not involved in this appeal.

It appears from the evidence that plaintiff had not read the book of instructions issued to her when she enrolled in the course, nor had she been assigned any reading therein. Neither party offered expert testimony as to the standards or customs of instruction in the game of golf. The handbook which plaintiff purchased described safety as "your most important lesson." In a chapter entitled "Essential Knowledge," certain "tips" for early experience on the golf course are given. Among these the statement is made:

"If possible, have an experienced golfer guide you in correct conduct."

■ The record is silent as to the qualifications or experience of Dr. Shasby, the instructor assigned to teaching the course. The jury could infer from the evidence that Dr. Shasby had placed Hunter in charge of the group which included plaintiff. They could also have concluded that Hunter was acting as a golfing instructor, although he was admittedly an inexperienced player. Obviously he improperly struck the ball and injured one of the very persons whom he was supposed to be instructing in the game. It seems to us that reasonable persons might find that Dr. Shasby, and through him the college, was negligent in placing a person of Hunter's experience in a position of sole responsibility and that Hunter's lack of experience was at least a factor which made injury to one of the students foreseeable. Regardless of whether Hunter himself was or was not negligent in the way he struck the ball, we are of the opinion that the Court of Appeals was in error in directing a verdict for the defendant college. The jury could have found that the likelihood of accidental injury was enhanced by placing such an inexperienced person in charge of the instruction.

■ As stated in the case of *Stehn v. Bernarr McFadden Foundations, Inc.,* 434 F.2d 811 (6th Cir. 1970), in which a student at a private military academy sustained serious injuries from another student while receiving instruction in a wrestling course:

"The defendant herein, of course, does not suggest that it owes no duty to its students. Among the obligations which a private school must as a matter of law assume, and which the defendant herein at least inferentially agrees it assumed, is the single duty of exercising reasonable care in providing supervision, instruction and in the conducting of its activities." 434 F.2d at 814–15.

It is true, of course, as pointed out by the Tennessee Court of Appeals in the case of *Brackman v. Adrian,* 472 S.W.2d 735, 739 (Tenn.App.1971):

"A private school is not the insurer of the safety of its students. This has been held in numerous cases in many jurisdictions throughout the country. The failure of proper supervision of students is not sufficient to fix liability on the school unless it is shown that failure was the proximate cause of the plaintiff's injuries. This proposition has been announced in numerous cases in a number of jurisdictions."

*See also Annot.* 38 A.L.R.3d 908 (1971).

The record in the present case offers little evidence to provide "standards against which to apply the private school's conduct in order to determine whether a breach of the obligation has occurred." *Stehn, supra,* 434 F.2d at 815. In the *Stehn* case the Court noted that there were a number of factual issues regarding the nature of the instruction given, the understanding of the students, the number of students involved, the number of instructors, etc. The Court declined to attempt to delineate "precise criteria" as to what should have been done in the conduct of a junior school wrestling class. Noting many factors involved, the Court said:

"Indeed, proof of a failure in any such area would not in and of itself establish a breach of duty, because the defendant did not owe a duty to plaintiff, for example, to match him only against opponents of exactly his own weight. However, evidence of what was actually done in each of these areas was properly received as relevant to the issue as to whether defendant breached its three pronged but single duty to provide proper wrestling instruction and supervision and to properly conduct that activity." 434 F.2d at 815.

We are of the opinion that the same may be said here. The status of the student, Hunter, was ambiguous, and a trier of fact might, as the defendant insists, conclude that he was only a fellow student playing a few holes of golf with other adult students in a situation where the college had no legal responsibility. On the other hand, a trier of fact might conclude that the plaintiff, a beginner and a novice at the sport, was receiving instructions as to how golf should be played. She was observing Hunter as he

attempted to drive the ball and was then expecting to drive for the first time under actual playing conditions. The regular instructor was absent, and the duty of supervision which the school legally owed under these circumstances had apparently been delegated to Hunter. . A jury might conclude that the latter was the instructor or was standing in the place and stead of an instructor who had a non-delegable responsibility. Negligence could have been found, predicated not so much on Hunter's improperly addressing the ball, as upon breach of the duty of supervision and instruction which the school owed to the student.

It could be inferred from the proof that the defendant felt that some supervision and instruction in the game of golf were needed, at least for beginning players. The jury could have found that under the circumstances this was not merely an informal group game, as was the softball game in *Brackman, supra.* On the other hand, golf perhaps is not as high-risk sport as some others, and the reasonableness of the conduct of defendant commensurate with the risks involved, in our opinion, was for the trier of fact to determine. The case does not turn entirely, however, on whether Hunter's own stroke of the ball was or was not "a negligent act," as concluded by the Court of Appeals, nor solely upon whether he was or was not a servant of the college.

■ It is entirely possible that under proper instructions, a trier of fact would conclude that the accident was completely unavoidable, as insisted by appellee. Certain risks, obviously, inhere in any sport or physical educational activity. In connection with golf, such risks include that of a ball being driven upon an unintended path. There is testimony that plaintiff was aware of that risk, and we are of the opinion, as previously stated, that there was sufficient evidence to justify a charge to the jury on assumption of risk. Since the plaintiff was standing in an area where she had been instructed to stand, however, and in which the evidence indicates an observer properly should stand, she could not be said, as a matter of law, to have necessarily assumed

the risk that her own instructor would strike the ball in such a way as to injure her. We are of the opinion that all of the issues, including that of unavoidable accident, should have been submitted to the jury under proper instructions and that these instructions should have delineated the nature of the duty of a private school toward its students as above indicated.

There are numerous cases in which educational institutions have been held liable for negligence in furnishing inadequate or improper instruction or supervision. *E. g., Morehouse College v. Russell,* 109 Ga.App. 301, 136 S.W.2d 179 (1964), where a swimming instructor delegated the supervision of beginning students to two members of the college swimming team. These older students undertook to conduct a freshman swimming class. While a group of freshmen were attempting to swim the length of the pool, one of them drowned. A jury verdict against the college was sustained on appeal.

■ It is insisted by appellee that it would have had no duty or responsibility whatever to appellant had she simply been struck by a fellow student while engaged in a game of golf. Under some circumstances, of course, this may be correct. It is also true that participants in sporting activities occupy a somewhat different legal position from mere observers or passers-by. *See e. g., Marques v. Riverside Military Academy, Inc.,* 87 Ga.App. 370, 73 S.E.2d 574 (1952). Where, however, students are novices and are receiving courses of instruction in sports held out and offered for credit by an educational institution, a duty of supervision and instruction arises from the relationship which is not terminated or abrogated merely by reason of the fact that one student participant injures another. *See Stehn v. Bernarr McFadden Foundations, Inc., supra; Restatement 2d Torts* § 320 (1965).

Each case of this nature turns upon all of the facts and circumstances. Hard and fast criteria are difficult to establish. Frequently expert testimony is helpful to show what the accepted standards and practices are in a particular sport. There may indeed

be many instances where a directed verdict is proper. Where, however, different and varied conclusions could be drawn from the proof, a jury issue is usually presented. We are convinced that such is the present case and that neither party was entitled to a directed verdict on any issue upon the trial record. Of course a different situation may be presented upon re-trial.

The judgment of the Court of Appeals is reversed and the cause is remanded for a new trial under more complete and appropriate jury instructions consistent with the issues presented. Costs incident to this appeal will be taxed equally to the parties. All other costs will abide the results of a new trial.

BROCK, C. J., and FONES and COOPER, JJ., concur.