OPINION OF THE COURT
Gerard M. Weisberg, J.
We are called upon, inter alia, to examine the application of assumption of risk and CPLR article 14-A to teacher-student situations in view of the recent decision of the Court of Appeals in Turcotte v Fell (68 NY2d 432).
This is a claim for damages arising from personal injuries sustained by claimant, Thressia Robertson Yarborough, while a student at York College (York), a senior college of the City University of New York (CUNY). Jurisdiction is vested in this court pursuant to Education Law § 6224. The trial was bifurcated at claimants’ request and we treat only the issue of liability at this time.
On February 29, 1984, the date of the incident, claimant was a 28-year-old junior at York majoring in elementary education. She was enrolled in "Physical Education for Elementary School Teachers”, a requirement for her field of study. Dr. Sneh P. Roy, an employee of CUNY, was the instructor.
The purpose of the course was to instruct prospective teachers in the methodology of conducting physical education classes for schoolchildren. The subject had both theory and practice components. During the theory section, Dr. Roy *284 would lecture on a general type of athletic activity. In the practice portion, one of the students, selected on a revolving basis by Dr. Roy, would lead the class in a particular exercise prepared by the student. Since one of the primary goals of the course was to provide actual experience in conducting physical education classes, participation of all students was "strongly recommended” by Dr. Roy. Claimant, therefore, reasonably believed that a lack of participation on her part would have had some negative impact on her grade.
The practice portion was held in a "multipurpose” area. Apparently, it had once been a gymnasium, but at the time of the occurrence was used as a classroom and for faculty meetings. There was disputed testimony concerning how often the floor was polished. Regardless of how frequently, or whether it was waxed at all, it is undisputed that the class was conducted on a hard wooden floor which Dr. Roy recognized as being slippery enough to require all students to wear sneakers for safety.
Prior to the day of the mishap, Dr. Roy lectured on the topic of relay races. The student assigned to prepare that week’s activity for the practice portion set up a sack race. She divided the class into two teams, provided each team with a plastic garbage bag and demonstrated how the race was to be run, to wit, by hopping with both feet in the bag. Each member of each team was to hop about 10 feet across the room and back. No instruction, however, was given concerning the positioning of a student’s feet within the sack. All the foregoing was done in Dr. Roy’s presence and with her knowledge. However, she just stood by silently because it was a "student activity”.
Claimant had never participated in a sack race before. She watched the student-leader’s demonstration and the first member of her team run the race. Then came her turn to participate. She got to the turn-around point but fell on her return trip. Not having been instructed otherwise, claimant failed to keep her feet together while hopping which resulted in her either tripping over the bag or slipping on it where it contacted the wood floor. In either event, in her fall her foot ripped through the bag and twisted beneath her, allegedly causing her injury. Dr. Roy testified that she did not see what happened, although it is undisputed that she was present when Ms. Yarborough fell. (Cf., Merkley v Palmyra-Macedon Cent. School Dist., 130 AD2d 937.)
Kathleen Hendrickson was claimants’ expert witness. She is *285 a licensed physical education teacher with 15 years’ experience teaching grades 9 through 12 and with 14 years’ experience supervising schoolchildren on weekend trips where events including sack races are conducted.
Ms. Hendrickson testified that sack races are usually conducted outdoors and always with a burlap sack, never with a plastic bag. In her opinion, a plastic bag would slip on a wooden floor and was, therefore, dangerous. She further stated that to avoid injury students should always be instructed that their feet be kept relatively close together while jumping. This prevents the sack from becoming tangled between their feet and provides a more solid foundation when landing.
DUTY OF CARE
A teacher is under a duty to use reasonable care to prevent injury to students. (Tabone v State of New York, 116 Misc 2d 864; Segal v State of New York, 79 Misc 2d 529.) This responsibility includes the obligation not to direct a student to do that which is unreasonably dangerous (Verduce v Board of Higher Educ., 8 NY2d 928; see, Brooks v Board of Educ., 12 NY2d 971; Gordon v State of New York, 57 Misc 2d 731; Keesee v Board of Educ., 37 Misc 2d 414), to see that any equipment supplied is reasonably safe for its intended use (Gross v Sweet, 49 NY2d 102; Bridges v Board of Educ., 301 NY 631; Walzer v Rettner, 11 AD2d 10; Tabone v State of New York, 116 Misc 2d 864, supra) and to provide such instruction and supervision as is reasonably required to safely perform the directed tasks or to use the supplied equipment (Gross v Sweet, 49 NY2d 102, supra; Lorenzo v Monroe Community Coll., 72 AD2d 945; La Valley v Stanford, 272 App Div 183).
What is reasonable will, of course, vary with, among other factors, the age and abilities of the student (Mintz v State of New York, 47 AD2d 570) and his or her reasonable expectations of due care under the circumstances. (Turcotte v Fell, 68 NY2d 432, supra.)
Defendant has breached its duty of due care to claimant. Directing anyone of any age to hop on a wooden floor in a plastic garbage bag created an unreasonable and foreseeable risk of injury which was then exacerbated by the failure to instruct claimant as to the proper technique to perform this maneuver. Notwithstanding that claimant was an adult at the time of the occurrence, put in the form of a direction from teacher to student, it must have been anticipated that claim *286 ant would follow and rely on such command. (Verduce v Board of Higher Educ., 8 NY2d 928, supra.) Nor was it reasonable to assume that claimant would know, without instruction, the correct procedure for hopping in plastic garbage bags — hardly a matter of common knowledge. Finally, defendant offered no explanation as to why it was necessary to conduct this exercise in this fashion, taking the position that it simply was not dangerous. Based on the testimony of claimants’ expert and common sense, we find that it was fraught with peril.
CONTRIBUTORY NEGLIGENCE/ASSUMPTION OF RISK
Defendant has raised the issues of contributory negligence and assumption of risk. Traditionally, assumption of risk is the doing of an act recognizing the possible consequences thereof under circumstances evidencing a voluntary acceptance of such danger and the intention to relieve the defendant from the duty to the claimant with respect to such danger. (Verduce v Board of Higher Educ., 8 NY2d 928, supra; cf., Turcotte v Fell, 68 NY2d 432, supra.) Contributory negligence is the doing of an act or failing to do an act which a reasonably prudent person would or would not have done under the circumstances. (Prosser and Keeton, Torts § 65, at 453 [5th ed].) Thus, where the danger is perceived, it may have been assumed. If not perceived, but unreasonably so, contributory negligence may follow. (Id., § 68, at 487; see, Franco v Zingarelli, 72 AD2d 211, 219.) Such simple distinctions, however, soon cloud over. For an actor may have assumed an even unperceived risk if it is "perfectly obvious”. (Turcotte v Fell, supra, at 439.) Moreover, while an act done under the direction of a superior or teacher and under an economic or quasi-economic compulsion is not considered voluntary for assumption of risk purposes (Brooks v Board of Educ., 12 NY2d 971, supra; Verduce v Board of Higher Educ., 8 NY2d 928, supra; Broderick v Cauldwell-Wingate Co., 301 NY 182; Culver v Gloo, 27 AD2d 698; Gordon v State of New York, 57 Misc 2d 731, supra; Luneau v Elmwood Gardens, 22 Misc 2d 255; Keesee v Board of Educ., 37 Misc 2d 414, supra), the decision to follow such direction may still be so unreasonable as to constitute contributory negligence. (Prosser and Keeton, Torts § 68, at 481 [5th ed].)
Applying the foregoing, claimant, as a student, was justified, at least partially, in assuming that the exercise she was directed to undertake, in the presence of her teacher, *287 would not be unreasonably dangerous to perform. (Verduce v Board of Higher Educ., 8 NY2d 928, supra.) Moreover, while she may have perceived some risk, she was justifiably reluctant to refuse to participate in light of the negative impact such decision could have had on her grade. (Supra.) Thus, claimant neither fully appreciated the risk nor was her participation fully voluntary.
In light of Turcotte v Fell (68 NY2d 432, supra), however, this still leaves the question of how to evaluate her conduct under CPLR 1411.
In Turcotte (supra), plaintiff, a professional jockey, was injured when his horse fell assertedly as the result of the negligent horsemanship of a fellow jockey and the failure of the track owner to properly maintain the track. In affirming the dismissal of the complaint, the Court of Appeals held that the defendants’ duty to plaintiff was determined, in part, by his reasonable expectations of due care. (Supra, at 437.) Since plaintiff fully perceived and voluntarily assumed the risks which caused his injury, the defendants’ conduct breached no duty to him. (Supra, at 441, 443.) Absent a duty, there could be no negligence; absent negligence, there was no fault to compare under CPLR 1411. (Supra, at 444.)
Thus, while Turcotte (supra) recognized, at least theoretically, that assumption of risk was not an absolute defense (supra, at 438), in stating that the " 'doctrine [of assumption of risk] deserves no separate existence * * * and is simply a confusing way of stating certain no-duty rules’ ” (supra, at 438), it appears, in reality, that the Court of Appeals no longer views it as an independent affirmative defense. Where the risk is fully perceived and voluntarily assumed, Turcotte teaches that no liability will obtain, CPLR 1411 notwithstanding, predicated on a no cause of action analysis. (See, Twerski, Caution Governs Liability Rulings, NYLJ, Sept. 28, 1987, at S-15, S-16.) Thus, in effect, assumption of risk remains a complete defense. (Accord, Prosser and Keeton, Torts § 68, at 496 [5th ed].) Short of the traditional elements of assumption of risk being fully established, the analysis should proceed along contributory negligence lines subject to comparative causation.
Here, as indicated above, the traditional elements of assumption of risk are lacking. Moreover, it was this lack of full perception and free choice coupled with defendant’s preexist *288 ing teacher-student obligations to claimant which rendered its conduct culpable. Thus, in accordance with Turcotte (supra), we have examined claimant’s conduct from an assumption of risk perspective in order to determine the extent of defendant’s duty and its breach thereof. We now reexamine it with respect to claimant’s contributory negligence.
With respect to such issue, although not an expert, claimant should have perceived the danger of hopping on a wooden floor in a plastic garbage bag. Due care required her at least to voice her concern to Dr. Roy who then might have modified the exercise or excused her from participation. Under all the circumstances, we find this failure on claimant’s part to be contributory negligence and the amount of damages otherwise recoverable should be diminished by 25%. (See, Neckamkus v City Univ., Ct Claims, June 5, 1985, Rossetti, J.; see also, Watson v State of New York, Ct Claims, Oct. 20, 1986, Lyons, J. [prisoner held contributorily negligent for failure to protest hazardous assignment].)
In summary, we cannot find claimant guilty of culpable conduct based on an assumption of risk analysis for two reasons. First, because her actions did not satisfy the traditional elements thereof. Second, because Turcotte (supra) indicates that the doctrine has no independent existence as an affirmative defense. However, we do find her partially at fault after reexamining her conduct from a contributory negligence point of view. In other words, what she did, based on what she perceived, while not constituting assumption of risk as traditionally formulated, was still unreasonable.
At both the completion of claimants’ case and after both sides rested, defendant moved to dismiss the claim for failure to establish CUNY’s negligence. In its argument, defendant asserted that claimants did not plead that the use of the plastic garbage bag was negligence or caused the accident. Decision on the motions was reserved.
Contrary to defendant’s assertion, paragraph fifth of the claim alleges that the defendant "was negligent * * * in instructing the Claimant * * * to take part in a sack race using a plastic garbage bag on a floor which was in a slippery condition.”
Upon all of the foregoing, the motions are denied and the clerk of this court is directed to enter an interlocutory judg *289 ment on the question of liability, holding the defendant CUNY liable for 75% of all damages arising from the incident of February 29, 1984. The court will set this matter down for trial on the issue of damages after a note of issue and certificate of readiness have been served and filed pursuant to Uniform Rules for Trial Courts (22 NYCRR 206.12).