833 P.2d 717

**Anthony Richard VEGA, Jr., and Sue Vega, his wife, Plaintiffs–Appellants,**

v.

**GRIFFITHS CONSTRUCTION, INC., an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 90–033.

Court of Appeals of Arizona, Division 1, Department A.

July 2, 1992.

Harris & Palumbo, P.C. by Kevin W. Keenan, Phoenix, for plaintiffs-appellants.

Hossack & Hoskins by Joseph L. Brownlee and Christopher D.C. Hossack, Phoenix, for defendant-appellee.

## OPINION

FIDEL, Chief Judge.

A construction worker, injured on the job, attributes partial responsibility to the general contractor, claiming that the general contractor neglected safety responsibilities that it had contractually assumed. We consider in this appeal whether the trial court properly granted summary judgment to the general contractor on the theory that it owed no duty to its subcontractor's employee.

## FACTS

■ On appeal from summary judgment, we review facts and inferences in the light most favorable to the party opposing the motion. *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990).

Plaintiff Anthony Richard Vega, Jr., worked on the Yuma Detention Center project as an employee of Liberty Steel & Maintenance Company. Liberty Steel was a subcontractor to Engineered Specialty Products, Inc. ("ESP"), which in turn was a subcontractor to the general contractor, defendant Griffiths Construction, Inc. ("Griffiths").

Plaintiff was injured while installing chain link security fencing on top of a wall that surrounded the prison recreation yard. While working at least twenty feet above ground on a scaffolding plank attached to a forklift's prongs, plaintiff braced one of his feet against the horizontal bar of a previously-installed section of the fence. The horizontal bar was attached to a vertical bar by means of a T-clamp designed and manufactured by ESP. The T-clamp, unable to bear plaintiff's weight, gave way, and plaintiff took a long fall to the ground.

Plaintiff received worker's compensation benefits through ESP, and he filed suit against Griffiths and others not party to this appeal. The trial court granted Griffiths' motion for summary judgment, finding that Griffiths owed plaintiff no duty of care. Plaintiff timely appealed.

## DISCUSSION

Disposition of the duty issue is controlled by our supreme court's recent decision in *Lewis v. N.J. Riebe Enter.*, 170 Ariz. 384, 825 P.2d 5 (1992). The supreme court there made clear that liability may flow from a general contractor's neglect of its duty to provide a reasonably safe workplace to subcontractors' employees. *Id.* at 392, 825 P.2d at 13. The evidence in this case permits the conclusion that Griffiths both contractually assumed and affirmatively exercised that duty. As the trial court based its judgment on a finding of no duty, this evidence requires us to reverse.[1]

### A. Contractually–Retained Safety Control

■ The contract between Griffiths and Yuma County made Griffiths solely "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work." The contract also obliged Griffiths to "take all reasonable precautions for the safety of ... all employees" and "designate a responsible member of his organization at the site whose duty shall be the prevention of accidents."

---

1. In a special concurring opinion, our colleague criticizes *Lewis* as wrongly decided. Without belaboring points that the supreme court has dispositively made, we simply note—lest silence be taken as joinder—that we do not share our colleague's view.

These identical provisions were found in *Lewis* to subject the general contractor to an "affirmative duty to control [the subcontractor's] work methods in order to insure the safety of everyone at the work site." *Id.* The court paraphrased the Restatement to define the liability that flows from negligent exercise of a contractual undertaking of this kind:

> [W]e hold that if a general contractor contractually assumes the responsibility for safety at a work site, it is liable for any injury resulting from its negligent exercise of that responsibility as long as the general contractor "[knew] or by the exercise of reasonable care should [have known] that the subcontractors' work [was being done in a dangerous manner], and ha[d] the opportunity to prevent it by exercising the power of control which he ... retained in himself." *Restatement (Second) of Torts* § 414 comment (b) (1965).

*Id.*

We conclude that Griffiths's contractual undertaking alone suffices to negate the trial court's finding of no duty.

### B. *Affirmative Exercise of Safety Control*

 A factfinder in this case could additionally conclude that Griffiths affirmatively exercised its contractual safety control. Project Manager Harlyn Griffiths, Jr., testified at deposition that he and another Griffiths representative were designated to oversee safety at the job site, that he walked the job daily, and that he would instruct subcontractors to take safety precautions if he found that they had neglected to do so.[2] Liberty Steel owner Charlie Walker likewise testified that Harlyn Griffiths, Jr., supervised safety at the site. A general contractor is liable, according to

---

2. This portion of Harlyn Griffiths's deposition was quoted by plaintiffs in their opening brief with a citation indicating that it was part of the record in the trial court. Although it was not transmitted to this Court in the record on appeal, Griffiths has not challenged its use or accuracy.

3. As we concluded in our memorandum decision in a related appeal, *Vega v. Engineered*

---

*Lewis*, if its safety manager exercises such authority negligently. *Id.* at 393, 825 P.2d at 14.

### C. *Other Theories*

 The trial court did not reach questions of negligence or causation; nor do we. We hold only that the trial court erred in finding that Griffiths owed the plaintiff no duty. In reversing the summary judgment on this ground, we do not disturb the trial court's rejection of plaintiffs' theories of product liability and implied warranty against Griffiths. Even if we ignore plaintiff's utter inability to show that the T-clamp was unsuitable for a reasonably foreseeable use, there is no evidence that Griffiths designed, sold, or warranted the T-clamp or placed it in the stream of commerce. Indeed, the T-clamp was not placed in the stream of commerce at all.[3] The record indicates, rather, that the T-clamp was a creature wholly of ESP's production, produced for this job alone. The trial court correctly rejected plaintiffs' theories of recovery on product liability and warranty grounds.

### CONCLUSION

Because the evidence establishes that Griffiths owed a duty to the plaintiff, we reverse the trial court's order granting summary judgment in favor of Griffiths and remand for further proceedings.

GERBER, J., concurs.

JACOBSON, Presiding Judge, specially concurring:

I concur in the result reached by the majority on the duty of care issue because I agree that this issue is controlled by the supreme court's decision in *Lewis v. N.J.*

---

*Specialty Products, Inc.,* 1 CA–CV 89–198, slip op. at 8 (App. Oct. 1, 1991), "ESP ... manufactured the T-clamp in this isolated instance, and was not in the business of manufacturing and selling T-clamps for general consumption. ESP designed the T-clamp solely for this particular project. We cannot say that ESP's actions placed the T-clamp in the general stream of commerce...."

*Riebe Enter.,* 170 Ariz. 384, 825 P.2d 5 (1992), and this court is bound by Arizona Supreme Court decisions. However, I write separately to set forth what I perceive to be problems with that decision.

The *Lewis* court started its analysis by looking to Restatement of Torts § 414 (1965) (§ 414), not for the *existence* of a duty owed by Riebe (the general contractor) to Lewis (the injured employee of the carpentry subcontractor), but rather to establish the *scope* of that duty. 170 Ariz. at 388, 825 P.2d at 9. The court reached this conclusion by determining that prior case law established that a general contractor owes a duty generally, regardless of circumstances, to provide a safe work place for employees of subcontractors. *Id.* Unfortunately, in my opinion, the supreme court has misconstrued the case law upon which it relied to establish this general duty of care; consequently, its analysis with regard to § 414 is flawed.

It has long been the law in Arizona that a general contractor is not liable for the negligence of an independent sub-contractor unless one of several well-recognized exceptions applies. *See, e.g., E.L. Jones Constr. Co. v. Noland,* 105 Ariz. 446, 454, 466 P.2d 740, 749 (1970) (setting forth the duty owed to employees of an independent contractor with regard to inherently dangerous work). One of these exceptions is the commonly called "retained control" exception of § 414 at issue in *Lewis* and the present case. *E.g., Pruett v. Precision Plumbing, Inc.,* 27 Ariz.App. 288, 291, 554 P.2d 655, 658 (1976). Section 414 sets out the duty owed by a general contractor when it "retains control of any part of the work." *Pruett,* 27 Ariz.App. at 291, 554 P.2d at 658.

Another well-known exception to the general rule of non-liability is the "joint work space" exception. *See generally Rashley v. Wilcox,* 160 Ariz. 321, 772 P.2d 1174 (App.1989). A general contractor owes a duty to a subcontractor's employees to keep joint work spaces reasonably safe because the general contractor can control access to the job site and can implement overall safety concerns on the premises.

*Id.,* citing *Durnin v. Karber Air Conditioning Co.,* 161 Ariz. 416, 419–20, 778 P.2d 1312, 1315–16 (App.1989). Closely related to this "joint work space" exception is the duty that arises by virtue of the general contractor's ability to coordinate the work of subcontractors so as to hold a general contractor liable if a dangerous condition is created by the interaction of two trades. *Chesin Constr. Co. v. Epstein,* 8 Ariz.App. 312, 317, 446 P.2d 11, 16 (1968).

With these well defined principles of law in mind, I turn to the *Lewis* court's reliance on *Manhattan–Dickman Constr. Co. v. Shawler,* 113 Ariz. 549, 558 P.2d 894 (1976) for its broad holding that a general contractor owes a duty to provide a safe work place for a subcontractor's employees, regardless of *where* or *how* the accident occurred. In that case, Manhattan–Dickman (the general contractor) subcontracted with Allison Steel Manufacturing and Raymar Contracting. The plaintiffs, employees of Raymar, were injured as a result of Allison Steel's negligence in performing its part of the job. The court relying on § 414 found a duty owed by Manhattan–Dickman "to exercise such control over Allison's work, at least to the extent that dangerous defects which might make Allison's work unsafe to others would be discovered." *Id.* at 553, 558 P.2d at 898.

In doing so, the *Manhattan–Dickman* court relied upon the California case of *Jean v. Collins Construction Co.,* 215 Cal. App.2d 410, 30 Cal.Rptr. 149 (1963), which held that a general contractor has a duty to exercise reasonable care to maintain the premises *over which it had control* in a safe condition. This statutorily imposed duty appears to be merely a codification of the common law. The facts in *Collins Constr. Co.* are that the injured employee of a sub-contractor received his injuries by falling onto steel reinforcing rods which were *installed by the general contractor* and which the court found the general contractor to have left in a dangerous condition by not bending these lethal spikes so as to avoid injury.

The *Manhattan–Dickman* court was entirely justified in relying on a case in which

**50**

the general contractor retains control of the premises for *Manhattan–Dickman* is a joint premise control case. The injured workman in *Manhattan–Dickman* was not injured by the negligence of his employer, rather the injury occurred as a result of a dangerous condition created by another subcontractor. *See generally Chesin, supra.* *Manhattan–Dickman* set forth the duty owed by a general contractor to a subcontractor's employees to keep the work place safe *vis-a-vis* the negligence of other subcontractors, and with that holding I have no dispute. I do, however, dispute the *Lewis* court's extension of that holding to create a duty to provide an employee with a work place safe from his own employer's negligence. Neither *Manhattan–Dickman* nor the other cases cited by *Lewis* so hold.

Because, in my opinion, there is no legal support for a general duty owed by a general contractor to a subcontractor's employees, that duty must be found in this case, as in *Lewis*, in § 414. As discussed in this court's majority opinion in *Lewis*, the "retained control" exception contemplated by § 414 is triggered by retention of control over the manner in which the work is done and the method of doing the details of the work. *Cordova v. Parrett*, 146 Ariz. 79, 82, 703 P.2d 1228, 1231 (App.1985); *Mason v. Arizona Public Serv. Co.*, 127 Ariz. 546, 550, 622 P.2d 493, 497 (App.1980). In my opinion, a general contractor's contractual responsibility for overall job safety does not equate to sufficient retained control under § 414 to give rise to a duty to employees of a subcontractor that caused the dangerous condition in the first place. In this regard, "retained control" vis a vis contractual responsibility must be distinguished from liability arising from control of joint work space or work space over which exclusive control is exercised. *See Collins Constr. Co.*

Contrary to the impression left by the *Lewis* court, an injured workman is not left uncompensated if § 414 is not so broadly interpreted. As was discussed in *Chesin*, an injured worker receives workers' compensation benefits from his employer. Under the *Lewis* holding, large general con-

tractors, who need not subcontract out as much of their work, will be subject only to worker's compensation premiums without the threat of tort liability from an injured employee of a subcontractor; smaller contractors, on the other hand, who subcontract out a greater portion of the overall job are at a substantially higher economic disadvantage. I see "no additional hazard to workmen inherent in the subcontracting of work, in the manner done here, to justify any such radical distinction in liability." *See Chesin*, 8 Ariz.App. at 318, 446 P.2d at 17. Moreover, the *Lewis* holding may have the result that general contractors will seek indemnity from their subcontractors so that the ultimate responsibility for injuries will be placed upon the employee's employer contrary to settled principles of worker's compensation law.

Pursuant to *Lewis*, all general contractors in Arizona effectively become potentially liable for all injuries occurring on a job site. This is a radical and unnecessary departure from prior law in this area. Without unduly belaboring this concurrence, I urge the supreme court to rethink its opinion in *Lewis*.