893 P.2d 55

**Ronald DELBRIDGE, a single man, Plaintiff–Appellant,**

v.

**MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, a governmental entity, Defendant–Appellee.**

**1 CA–CV 93–0445.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 8, 1994.

Review and Cross–Petition for Review Denied April 25, 1995.

**56**

Jerry Steele, Phoenix, for plaintiff-appellant.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg, Alison Lewis, Rick N. Bryson, Daniel A. Rice, Phoenix, for defendant-appellee.

## OPINION

CONTRERAS, Judge.

The question in this appeal is whether the Maricopa County Community College District ("MCCCD") which offered a course providing specialized training available only to Salt River Project ("SRP") employees, owed a duty to exercise reasonable care for those employees. We hold that MCCCD owed a duty of care to the appellant, who was enrolled and injured in the class, to avoid exposing him to an unreasonable risk of harm.

Accordingly, we reverse summary judgment in favor of MCCCD.

## BACKGROUND

This is an appeal from summary judgment. Therefore, we view the facts and inferences in the light most favorable to the party against whom judgment was entered. *Vega v. Griffiths Const., Inc.,* 172 Ariz. 46, 47, 833 P.2d 717, 718 (App.1992).[1]

Rio Salado Community College ("Rio Salado") is a college within the MCCCD. Rio Salado does not have a permanent campus. Instead, the college holds its classes in rented facilities at locations such as office and industrial buildings, shopping malls, and high schools. A representative from Rio Salado inspects potential class sites to determine suitability. Rio Salado representatives usually do not have the expertise to know whether an industrial facility is safe, but, because the college generally uses facilities at large companies, it feels secure in relying on the safety standards of those businesses. In one instance, the college rejected a building as a class site because it was dirty and appeared unsafe for students.

Rio Salado offers courses created to meet the specific needs of an industry or of a particular company; these courses are not available to the general public. Typically, a company asks Rio Salado to design a college course for its in-house training. Rio Salado works with the company to develop a formal college course that meets the company's needs as well as the college's standards.

SRP contacted MCCCD regarding a training course for SRP's pre-apprentice linemen. SRP had been providing line construction training to its employees during the regular workday on an in-house basis. MCCCD, through Rio Salado, and SRP entered into an "Educational Service Agreement," in which they agreed that Rio Salado would "provide curriculum and instructional design with the advice and consent of PROGRAM [SRP's

---

1. MCCCD argues that certain evidence cited by Delbridge is inadmissable because it was not before the trial court when the court decided MCCCD's motion for summary judgment and because it was not newly discovered. In reaching our decision, we have not considered any facts other than those addressed by the trial court in deciding MCCCD's summary judgment motion. Additionally, because of our holding in this appeal, we have not considered the merits of the motion for new trial.

apprenticeship program], for selected individuals identified by PROGRAM." The agreement specifically provided that "[a]ll curriculum and instruction is under control of Rio [Salado]." SRP was to provide instructors who were certified by the State Board of Directors for Community Colleges of Arizona.

SRP required its pre-apprentice linemen to take two sixteen-week training classes offered through Rio Salado. SRP employees enrolled in these courses and paid tuition to SRP at the prevailing rate for MCCCD courses; SRP remitted the tuition payments to MCCCD. Rio Salado then paid SRP for the instructor's salary, facilities rental, and supplies. As Rio Salado students, the SRP pre-apprentice linemen were included in the count of the district's full-time student equivalent, the basis for MCCCD's state funding.

Appellant Ronald Delbridge ("Delbridge"), employed by SRP as a pre-apprentice lineman, enrolled in Rio Salado's Plant Mechanics course[2] at SRP's request. Delbridge paid tuition for the course and registered as a Rio Salado student. Plant Mechanics was held at SRP's skill training center, where SRP had designed and built a pole yard for linemen training classes. The class met after working hours, and although the students did not receive wages for time spent in class, SRP reimbursed them for the tuition upon completion of the course.

Paul L. Manganaro, an SRP employee, taught Plant Mechanics. In addition to his regular salary, SRP paid Manganaro $435 per credit hour for teaching this class, the amount MCCCD paid its part-time adjunct instructors. As required by MCCCD, Manganaro possessed an Arizona Community College Special. Teaching Certificate issued by the Board of Directors for Community Colleges of Arizona. Rio Salado evaluated all of its adjunct instructors and could have terminated his contract with the college at will.

During class on February 12, 1991, Manganaro required Delbridge to free climb[3] a large diameter utility pole to a height of thirty feet. Manganaro required all of his students to free climb.[4] At approximately thirty feet above the ground, Delbridge lost his grip and fell. He was rendered paraplegic.

Delbridge filed a civil tort action against MCCCD, Rio Salado, and SRP. SRP is not a party to this appeal.[5] In his complaint, Delbridge alleged that MCCCD and Rio Salado owed him a duty to provide a reasonably safe class environment and to protect him from unreasonable risks of harm in class. MCCCD and Rio Salado moved for summary judgment, arguing that they did not owe a duty to Delbridge.

The trial court granted MCCCD's motion for summary judgment, concluding that "the arrangement between Rio Salado and the Plaintiff did not impose any duty on Rio Salado with respect to the technical training conducted by the Salt River Project."

Delbridge moved for a new trial and for relief from the summary judgment. Following the court's denial of these motions, Delbridge timely appealed from the judgment entered in favor of MCCCD and from the denial of his motion for new trial.

## DISCUSSION

### A. The Concept of Duty

The issue on appeal is whether the trial court erred in concluding that MCCCD and Rio Salado did not owe a duty to Delbridge. The threshold question in a negligence action is whether the defendant had a

2. SRP and Delbridge referred to this course as Line Construction II. MCCCD's records designated the course as PMN 120, Plant Mechanics II. We will use MCCCD's designation.

3. A free climb is done without a safety strap.

4. The record indicates that the issue of whether Manganaro required his students to free climb may have been a disputed fact. Plaintiff's "Request for Admissions with Interrogatories to De-

fendant Salt River Project and Answers Thereto" states that Plant Mechanics students could choose to make either a free or belted climb in class.

5. In a separate opinion filed this date, we hold that Delbridge's sole and exclusive remedy against SRP for injuries was workers' compensation.

legally recognizable duty to conform to a particular standard of conduct to protect the plaintiff from unreasonable risks of harm. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Duty arises out of the relationship between the parties and imposes a legal obligation on one party for the benefit of the other party. *Alhambra Sch. Dist. v. Maricopa County Superior Court*, 165 Ariz. 38, 41, 796 P.2d 470, 473 (1990). To determine whether a defendant had a duty to a plaintiff, a court must consider whether their relationship required the defendant to exercise care to prevent injury to the plaintiff. *Lasley v. Shrake's Country Club Pharmacy*, 179 Ariz. 583, 584–85, 880 P.2d 1129, 1131–34 (App. 1994). The issue of whether a duty exists is usually for the court to decide as a matter of law. *Markowitz*, 146 Ariz. at 354, 706 P.2d at 366.

### B. Relationships out of Which Duty Arises

Delbridge argues that, because he was a student enrolled in a Rio Salado course, MCCCD and Rio Salado were obligated to ensure that the class content and instruction did not subject Delbridge to any unreasonable risks of harm.

By contrast, MCCCD asserts that there was no recognized legal relationship between Delbridge and either MCCCD or Rio Salado from which a duty flowed. MCCCD argues that there are only two bases for finding a duty in this case: (1) ownership or control of the premises and (2) custody of the student. MCCCD maintains that, because SRP owned the premises on which the class was held and Delbridge's injury occurred and because Delbridge was an adult and thus not subject to MCCCD's custody, neither MCCCD nor Rio Salado owed a duty to protect Delbridge. We disagree.

### C. The Teacher–Student Relationship Creates a Duty

■ The teacher-student relationship is a special one, affording the student protection from unreasonable risks of harm. *See Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265, 782 P.2d 739, 741 (App.1989). School districts, administrators, and teachers have a legal obligation for the benefit of the students enrolled in their classes. *See Rogers v. Retrum*, 170 Ariz. 399, 401, 825 P.2d 20, 22 (App.1991). "This obligation includes the duty not to subject those students, through acts, omissions, or school policy, to a foreseeable and unreasonable risk of harm." *Id.; see also Jesik v. Maricopa County Community College Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980) ("A public school district in Arizona is liable for negligence when it fails to exercise ordinary care under the circumstances."); *Chavez v. Tolleson Elementary Sch. Dist.*, 122 Ariz. 472, 476, 595 P.2d 1017, 1021 (App.1979) (school personnel had duty of ordinary care to students in their charge). Therefore, MCCCD and Rio Salado had a duty to protect students like Delbridge from unreasonable risks of harm.

### D. A Teacher–Student Relationship Exists in This Case

■ Here, Delbridge clearly was a Rio Salado student at the time and place of his injury. He registered with Rio Salado for the class, paid the amount of tuition paid by other Rio Salado students, received grade reports from Rio Salado, and attended class after work. Although SRP specified and primarily developed the course content, a MCCCD curriculum designer assisted in course development and ensured that the course contained the elements necessary for college credit. MCCCD approved the course and the instructor. Further, Rio Salado assigned the course a name and number within its system.

Additionally, MCCCD assumed primary control over the classroom through its contractual relationship with SRP. While SRP actually possessed considerable control over Plant Mechanics, the written agreement between MCCCD and SRP specified that all curriculum and instruction were under Rio Salado's control. Rio Salado also evaluated Manganaro and could have terminated him as an adjunct instructor at any time. The foregoing facts demonstrate that Rio Salado did not simply grant college credit to SRP employees who completed an SRP job training program.

Furthermore, as students, SRP employees paid the regular MCCCD tuition, and Rio Salado reimbursed SRP for Manganaro's teaching salary from tuition funds. This financial arrangement demonstrates that Plant Mechanics was a Rio Salado course. By approving the course and collecting tuition from the students, as well as counting them for state funding purposes, MCCCD and Rio Salado assumed an educator-student relationship with the SRP student employees.

*E. The Scope of the Teacher's Duty to his Student*

MCCCD cites a number of cases, all of which involve students injured during off-campus non-curricular activities. *See, e.g., Bradshaw v. Rawlings,* 612 F.2d 135 (3d Cir.), *aff'g in part, rev'g in part,* 464 F.Supp. 175 (E.D.Pa.1979); *Hartman v. Bethany College,* 778 F.Supp. 286 (N.D.W.Va.1991); *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987); *Beach v. University of Utah,* 726 P.2d 413 (Utah 1986); *Hoyem v. Manhattan Beach City Sch. Dist.,* 22 Cal.3d 508, 150 Cal.Rptr. 1, 585 P.2d 851 (1978).

■ The issue here, however, concerns a school district's duty to provide a safe *in-class* environment for its students. We do not accept MCCCD's contention that the SRP lineman training class was not held on MCCCD premises. The record demonstrates that the facilities at which Rio Salado holds its classes become the Rio Salado "campus." Even if we accept that the class was held off-campus, Delbridge was injured nonetheless while performing an exercise which was both supervised by the instructor and included in the curriculum. Therefore, the custodial supervision and *in loco parentis* cases cited by MCCCD do not govern this appeal.

By contrast, courts in a number of other jurisdictions have imposed liability on colleges and universities for injuries suffered by students while attending classes. E.g., *Brigham Young University v. Lillywhite,* 118 F.2d 836 (10th Cir.1941) (university liable to student injured in chemistry lab); *LaVoie v. New York,* 91 A.D.2d 749, 458 N.Y.S.2d 277 (1982) (same); *DeMauro v. Tusculum College, Inc.,* 603 S.W.2d 115 (Tenn.1980) (uni-

versity liable to student injured in physical education class); *Amon v. New York,* 68 A.D.2d 941, 414 N.Y.S.2d 68 (1979) (university liable to student cut by a table saw in the university scenery shop); *Grover v. San Mateo Junior College Dist.,* 146 Cal.App.2d 86, 303 P.2d 602 (1956) (college liable to student injured during noncompulsory part of aeronautics course); *Yarborough v. City University of New York,* 137 Misc.2d 282, 520 N.Y.S.2d 518 (Ct.Cl.1987) (university liable to student injured in physical education class).

MCCCD attempts to distinguish the cases cited by Delbridge by arguing that each involved an injury which occurred on school property, thus fitting within premises liability. However, none of these cases was decided on premises liability grounds. In fact, the courts in both *Weber v. State,* 53 N.Y.S.2d 598 (Ct.Cl.1945) (school liable on labor law grounds for injury to student in carpentry class), and *Grover* imposed liability for injuries suffered off-campus.

Although the courts in *Lillywhite, Amon,* and *LaVoie* did not discuss duty, they each assumed that the universities in question owed duties of due care to their students while in class. For example, in *Yarborough* the court stated,

A teacher is under a duty to use reasonable care to prevent injury to students. This responsibility includes the obligation not to direct a student to do that which is unreasonably dangerous, to see that any equipment supplied is reasonably safe for its intended use, and to provide such instruction and supervision as is reasonably required to safely perform the directed tasks or to use the supplied equipment.

520 N.Y.S.2d at 520–21 (citations omitted). Similarly, in *DeMauro* the court concluded that a private university has a duty to exercise reasonable care in supervising and instructing students.

We conclude that, when he was injured, Delbridge was a student in a course offered by MCCCD and Rio Salado. Further, as a matter of law, MCCCD and Rio Salado each owed a duty of reasonable care not to expose Delbridge to an unreasonable risk of harm. We do not decide whether MCCCD breached

this duty.[6] That determination will likely be made by the trier of fact. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.

JACOBSON, P.J., and TOCI, J., concur.

---

**6.** We also do not decide whether Manganaro was an agent of the college who could subject it to vicarious liability or liability under a *respondeat superior* theory. Although the parties discuss this issue on appeal, it does not appear from the record that the trial court ruled on this issue. We hold that MCCCD and Rio Salado each had a duty to use reasonable care toward Delbridge. Whether they have any vicarious liability for the acts of the instructor is a matter that may be litigated in the trial court.